*2 Chief Judge GIERKE
delivered the opinion of the Court.
Pursuant to Article 66(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(a),[1] the Judge Advocate General of the Air Force assigns appellate judges to the United States Air Force Court of Criminal Appeals.[2] The Judge Advocate General of the Air Force assigned a Member of Congress, Senator Lindsey O. Graham, who was also a lieutenant colonel in the United States Air Force Standby Reserve at the time, as an appellate judge on the Air Force Court of Criminal Appeals. At the lower court, Appellant unsuccessfully challenged Senator Graham’s sitting on the panel that affirmed his conviction and sentence.[3]
The Incompatibility Clause of the Constitution provides that “no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.”[4] The issue before this Court is whether the assignment of a Member of Congress to the Air Force Court of Criminal Appeals is proper under the Constitution.[5] For the reasons set forth below, we conclude that a Member of Congress may not hold the office of appellate judge on a Court of Criminal Appeals.
FACTS
At a special court-martial composed of a military judge sitting alone, Appellant was convicted, pursuant to his plea, of wrongful use of cocaine, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.[6] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 135 days, and reduction to the lowest enlisted grade. The convening authority approved the sentence after modifying the confinement to a period of four months pursuant to a pretrial agreement.
The Air Force Court of Criminal Appeals reviewed the ease pursuant to Article 66(b), UCMJ.[7] Under Article 66(c), UCMJ, the Court of Criminal Appeals conducts a de novo review of the record in such cases for legal sufficiency, factual sufficiency, and sentence appropriateness.[8]
Senator Graham served on the panel of the Court of Criminal Appeals that reviewed Appellant’s case. Senator Graham is an officer in the United States Air Force Standby Reserve.[9] Pursuant to applicable regulations, he has been designated as a “key employee” assigned to the Active Status List within the Standby Reserve, where he is eligible to participate in reserve training activities without pay, earn retirement points, and compete for promotion.[10] Appellant moved to disqualify Judge Graham on several grounds, citing, inter alia, the Incompatibility Clause of the Constitution of the United States. The lower court denied the motion and affirmed the findings and the sentence.[11] Appellant has renewed his challenge to Judge Graham in his appeal to this Court.
I. STANDING
Initially, we must address whether Appellant has standing to assert this claim of constitutional error. The present case is *3 similar to Ryder v. United States,[12] in which the Supreme Court upheld a military petitioner’s right to challenge “the composition of the Coast Guard Court of Military Review while his case was pending before that court on direct review.”[13] In Ryder, the petitioner presented a constitutional claim based on the Appointments Clause of Article II of the Constitution.[14] The Supreme Court stated, “[O]ne who makes a ... challenge to the constitutional validity of the appointment of an officer who adjudicates his ease is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred.”[15] In the present case, as in Ryder, Appellant also has raised a jurisdictional objection that the lower court is not properly constituted. Appellant’s position arises from the assignment of a Member of Congress as an appellate judge on the lower court and his participation on the panel that decided Appellant’s ease. We conclude Appellant has standing under Ryder.
The Government contends that Appellant lacks standing to challenge the panel in his case because he has not suffered an injury to a legally protected interest. Contrary to the Government’s assertion, the constitutionality of the assignment of a person to serve as a judge on a Court of Criminal Appeals is not an abstract question. The fact that a Member of Congress sat as a judge in this criminal case relates to the rights and liberties of a specific individual, Appellant. The direct liberty implications for Appellant make this case distinct from other abstract circumstances where the Incompatibility Clause might be implicated. Consistent with the Supreme Court position in Ryder, Appellant is entitled to a decision as to the constitutional validity of the appointment of an officer who adjudicated his case.[16]
The Government also contends that Appellant lacks standing because Incompatibility Clause determinations are the sole province of Congress. In support of this contention, the Government asserts that the Incompatibility Clause constitutes qualification for congressional service, not a disqualification from executive branch service, making it a nonjusticiable political question. The Government further asserts that, in any case, Congress would not find a violation because service in the Standby Reserve does not make a person an officer of the United States.
The issue before us is not whether the duties of a person in the Standby Reserve, in the abstract, are of sufficient significance to constitute an office of the United States for purposes of qualification to serve as a Member of Congress under the Incompatibility Clause. The issue before us is whether a criminal conviction and sentence, which by statute can be sustained only by an affirmative appellate decision, may be reviewed by an appellate judge who simultaneously serves as a Member of Congress.
Under the Government’s theory of standing, no citizen could cite the Incompatibility Clause in challenging a governmental decision bearing directly on the life, liberty, or property of the citizen. Members of Congress could serve as the heads of departments and regulatory agencies, simultaneously participating in the passage of legislation and in the execution of the laws. A person against whom such a law was executed, under the Government’s theory, could not challenge the participation of Members of Congress in the enforcement *4 and adjudication of rights under such laws. Under such a regime, the structural integrity of the Constitution would rest on a gravely weakened foundation. We reject all of the Government’s arguments that Appellant lacks standing and proceed to the merits of this appeal.
II. BACKGROUND
A. SUPREME COURT PRECEDENT REAFFIRMING THE PRINCIPLE OF SEPARATION OF POWERS
In Buckley v. Valeo,[17] the Supreme Court emphasized the significance of the bedrock constitutional principle of separation of powers as this principle applies to the appointment and assignment of persons holding federal office. In Buckley, the plaintiffs challenged the appointment of the Federal Election Commission members on separation of powers grounds. “The Court agreed with them and held that the appointment of four members of the commission by Congress, rather than the President, violated the Appointments Clause.”[18]
In doing so, the Supreme Court reaffirmed the vital role of the separation of powers constitutional principle stating that “The principle of separation of powers was not simply an abstract generalization in the minds of the Framers: it was woven into the document that they drafted in Philadelphia in the summer of 1787.”[19]
In Buckley, the Supreme Court also analyzed and relied on related constitutional threads “woven into the document” tied to the principle of separation of powers — the Appointments Clause and the Ineligibility and Incompatibility Clauses.[20] Importantly, the Supreme Court explained the close relationship among these clauses.[21]
After reviewing the primary sources of legislative, executive, and judicial powers, the Supreme Court observed: “The further concern of the Framers of the Constitution with maintenance of the separation of powers is found in the so-called ‘Ineligibility’ and ‘Incompatibility’ Clauses contained in Art. I, § 6----”[22] The Supreme Court observed that these “cognate provisions” provided the context for interpreting the Appointments Clause of the Constitution.[23]
The Supreme Court in Buckley generally defined and thereby identified those federal government positions to which the Appointments Clause pertains. The Supreme Court observed that the term “Officers of the United States” includes “all persons who can be said to hold an office under the Government.”[24] The Supreme Court also stated that “any appointee exercising significant authority pursuant to the laws of the United States is an ‘Officer of the United States’ ” under the Appointments Clause.[25]
B. SUPREME COURT PRECEDENT APPLYING THESE PRINCIPLES TO JUDGES APPOINTED TO A COURT OF CRIMINAL APPEALS
The Supreme Court applied these principles in a trilogy of Appointments Clause cases involving the assignment of persons to sit as judges on the Courts of Criminal Appeals.[26] In so doing, the Supreme Court *5 precedent defines and explains the status of judges on the Courts of Criminal Appeals.
In Weiss v. United States, the Supreme Court stated that military judges, including appellate judges, are “Officers” of the United States who “must be appointed pursuant to the Appointments Clause.”[27] The Supreme Court held that presidential nomination and Senate confirmation of a person as a military officer would satisfy the Appointments Clause with respect to the assignment of such an officer to the military judiciary.[28]
In Ryder, the second ease, the Supreme Court addressed the assignment of two civilians by the General Counsel of the Department of Transportation to serve as judges on the Coast Guard Court of Military Review (now the Coast Guard Court of Criminal Appeals).[29] During direct • review, the servieemember had challenged the composition of the panel that reviewed his case under Article 66, UCMJ, on the ground that the civilian members had not been appointed by the President, a court of law, or the head of a department, as required by the Appointments Clause.[30] The Supreme Court agreed, implicitly applying the pertinent reasoning of Weiss that judges on the Courts of Criminal Appeals are officers who must be appointed under the Appointments Clause. The Court concluded that the constitutional violation could not be cured by according de facto validity to the actions of the civilian judges.[31]
After noting that the Appointments Clause “is a bulwark against one branch aggrandizing its power at the expense of another,” the Supreme Court added: “[B]ut it is more: it ‘preserves another aspect of the Constitution’s structural integrity by preventing the diffusion of the appointment power.’ ”[32] The Supreme Court also noted that it would not invoke the de facto officer doctrine in a case involving “basic constitutional protections designed for the protection of litigants.”[33] In the course of rejecting the government’s contention that any error in the appointment of these appellate judges was harmless, the Supreme Court emphasized the unique powers of intermediate courts under Article 66, UCMJ, including their “broad[ ] discretion to review claims of error, revise factual determinations, and revise sentences.”[34]
In the third case, Edmond, the Supreme Court considered the assignment of civilian judges at the Coast Guard Court of Criminal Appeals after appointment by the head of a department, the Secretary of Transportation.[35] The Supreme Court held that appointment by a department head met the terms of the inferior officers provision of the Appointments Clause, and that the Constitution did not require presidential appointment and Senate confirmation of these judges.[36] The Supreme Court emphasized that treatment of the judges on the Courts of Criminal Appeals as “inferior officers” reflected the applicable supervisory hierarchy, including review by our Court.[37] The Supreme Court took the opportunity to underscore the significant authority exercised by judges on the Courts of Criminal Appeals as “Officers of the United States”: “We do not dispute that military appellate judges are charged with exercising significant authority on behalf of the United States. This, however, is also true of offices that we have held were ‘inferi- or’ within the meaning of the Appointments Clause.”[38] The Supreme Court added: “The exercise of ‘significant authority pursuant to the laws of the United States’ marks, not the *6 line between principal and inferior officer for Appointments Clause purposes, but rather, as we said in Buckley, the line between officer and non-officer.”[39]
III. DISCUSSION
Appellant asserts that the participation of a Member of Congress as an appellate judge in this case violates the Incompatibility Clause of the United States Constitution that provides: “no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.”[40] The Supreme Court has noted that “The Constitution thereby ... prohibits Members of Congress from holding other offices through [this] limitation, the Incompatibility Clause.”[41]
In Buckley, the Supreme Court reaffirmed the principle of separation of powers and the operation of both the Appointments Clause and the Incompatibility Clause to bolster this principle.[42] As to the Appointments Clause, the Supreme Court stated it is critical to the structural integrity of the Constitution, not a mere form of “etiquette or protocol.”[43] Addressing the Incompatibility Clause, the Supreme Court stated that “The further concern of the Framers of the Constitution with maintenance of the separation of powers is found in the so-called ‘Ineligibility’ and ‘Incompatibility’ Clauses____”[44]
Indeed, “the Incompatibility Clause plays a vital role in our constitutional scheme ... by ... reinforcing the separation of powers.”[45] Further, “the Incompatibility Principle has become one of the five great distinguishing structural features of our constitutional system, along with checks and balances, separation of powers, bicameralism, and federalism.”[46]
We review the assignment of judges to the Courts of Criminal Appeals in the context of pertinent Supreme Court precedents addressing the Appointments Clause, described in Section II, supra. The Supreme Court has instructed “that the Constitution’s terms are illuminated by their cognate provisions.”[47] In view of the close relationship between the Appointments Clause and the Incompatibility Clause as “cognate provisions,”[48] the precedents developed under the Appointments Clause provide the appropriate framework for interpreting the Incompatibility Clause.
In the Appointments Clause cases discussed in Section II, supra, the Supreme Court emphasized that an appellate judge serving on a Court of Criminal Appeals exercises significant authority on behalf of the United States in adjudicating the rights of servicemembers. In that capacity, a judge on a Court of Criminal Appeals holds an “office under the government” that must be filled by an “Officer of the United States” under the Appointments Clause.[49]
In the context of the Incompatibility Clause — a “cognate provision” — the term “office” should be given the same meaning. Accordingly, the Incompatibility Clause — which prohibits a Member of Congress from “holding any Office under the United States”— precludes a Member from serving as an appellate judge on a Court of Criminal Appeals — an “office” that must be filled by an “Officer of the United States.”
The present problem before this Court is the judge’s simultaneous service as a Member of Congress and an appellate judge. The *7 fundamental principle of separation of powers is the key to analyzing the relationship among branches of government as they apply to a citizen. The structure of the Constitution provides for separate and shared powers among the branches.[50] This separation of powers was forged in the hard-earned lesson from history that executive, legislative, and judicial powers should not reside in one hand.[51] One of the purposes served by the separation of powers is that a military accused will not be judged by a Member of Congress. Service by a Member of Congress performing independent judicial functions runs afoul of the fundamental constitutional principle of separation of powers.
The present case does not require us to determine the qualification of an individual to serve as a Member of Congress; nor does it require us to define the scope of the standing of citizens in general to litigate the relationship between congressional service and membership in the Reserves.[52] Military status simply is not an issue. The foregoing principles apply equally to all who would act as judges on the Court of Criminal Appeals, whether as a civilian or as a military officer.
In this case, a Member of Congress is serving in a position that requires the exercise of judicial power to affirmatively find beyond a reasonable doubt that an accused committed a criminal offense, that there is no prejudicial error, and that the sentence is lawful and appropriate.[53] A position that requires the exercise of those powers is an office of the United States and cannot be filled by a person who simultaneously serves as a Member of Congress. We conclude that Appellant has a right in such a proceeding to have his case decided by a judge who is not then a Member of Congress.
CONCLUSION
Like the servicemember in Ryder, Appellant in the present case properly challenged the constitutionality of the assignment of a person to serve on the panel reviewing his case.[54] The legal defect here is in the assignment of a Member of Congress to be a judge on the Air Force Court of Criminal Appeals. The assignment of a Member of Congress to serve in such an office violated the Incompatibility Clause, a provision essential to the structural integrity of the Constitution. As a result, the panel was not properly constituted. Only a properly constituted appellate panel can complete the review required by Article 66, UCMJ. Therefore, as in Ryder, the unconstitutional assignment at issue here invalidates the decision of the court below.[55] The proceedings at the lower court are invalid and void.[56]
DECISION
The decision of the United States Air Force Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for a new review by the United States Air Force Court of Criminal Appeals.

. 10 U.S.C. § 866(a) (2000).

. Pursuant to Article 66(a), UCMJ, the Judge Advocate General of each service (Air Force, Army, Coast Guard, and Navy) has established a service Court of Criminal Appeals.

. United States v. Lane, 60 M.J. 781 (A.F.Ct.Crim. App.2004).

. U.S. Const, art. I, § 6, cl. 2.

. Appellant expressly stated that he is not challenging Senator Graham’s service in the military in general or his status as a Standby Reservist in particular, and we do not address those issues.

. 10 U.S.C. § 912a (2000).

. Article 66(b), UCMJ, provides for review by a court of criminal appeals for cases in which the sentence extends to death, a punitive separation, or confinement for one year or more.

. See United States v. Cole, 31 M.J. 270, 272 (C.M.A.1990)(referring to the Article 66(c), UCMJ, power of the lower court as an "awesome, plenary, de novo power of review”).

. See 10 U.S.C. §§ 10141(a), 12301(a), 12306 (2000).

. Dep’t of Defense Dir. (DODD) 1200.7, Screening the Ready Reserve Enclosure 2 (Nov. 18, 1999); DODD 1235.9, Management of the Standby Reserve 4.2.1 (Feb. 10, 1998).

. Lane, 60 M.J. at 794.

. 515 U.S. 177, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995).

. Id. at 182, 115 S.Ct. 2031. The Coast Guard Court of Military Review is now the Coast Guard Court of Criminal Appeals.

. Id. at 180, 115 S.Ct. 2031. The relevant provision of the Appointments Clause states:
[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.
U.S. Const, art. II, § 2, cl. 2.

. Ryder, 515 U.S. at 182-83, 115 S.Ct. 2031.

. See id.

. 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

. Ryder, 515 U.S. at 183, 115 S.Ct. 2031 (explaining Buckley, 424 U.S. at 143, 96 S.Ct. 612).

. Buckley, 424 U.S. at 124, 96 S.Ct. 612.

. Id. The Ineligibility Clause provides: "No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been [(Increased during such time...." U.S. Const, art. I, § 6, cl. 2.

. Buckley, 424 U.S. at 124, 96 S.Ct. 612.

. Id.

. Id.

. Id. at 125-26, 96 S.Ct. 612 (quoting United States v. Germaine, 99 U.S. 508, 509-10, 25 L.Ed. 482 (1879)).

. Id. at 126, 96 S.Ct. 612.

. Weiss v. United States, 510 U.S. 163, 167-76, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994); Ryder, 515 U.S. at 179-88, 115 S.Ct. 2031; Edmond v. United States, 520 U.S. 651, 653-66, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997).

. 510 U.S. at 170, 114 S.Ct. 752.

. Id. at 176, 114 S.Ct. 752.

. 515 U.S. at 179, 115 S.Ct. 2031.

. Id. at 180, 115 S.Ct. 2031.

. Id. at 188, 115 S.Ct. 2031.

. Id. at 182, 115 S.Ct. 2031 (quoting Freytag v. Commissioner, 501 U.S. 868, 878, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991)).

. Id. (quoting Glidden Co. v. Zdanok, 370 U.S. 530, 536, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962)).

. Id. at 187, 115 S.Ct. 2031.

. 520 U.S. at 653, 117 S.Ct. 1573.

. Id.

. Id. at 662, 117 S.Ct. 1573.

. Id. at 662, 117 S.Ct. 1573 (citing Freytag, 501 U.S. at 881-82, 111 S.Ct. 2631).

. Id. (citing Buckley, 424 U.S. at 126, 96 S.Ct. 612).

. U.S. Const, art. I, § 6, cl. 2.

. Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 210, 94 S.Ct. 2925 (1974).

. Buckley, 424 U.S. at 124, 96 S.Ct. 612.

. Id. at 125, 96 S.Ct. 612.

. Id. at 124, 96 S.Ct. 612.

. See Stephen G. Calabresi & Joan L. Larsen, One Person, One Office: Separation of Powers or Separation of Personnel?, 79 Cornell L.Rev. 1048 (1994).

. Id.

. Freytag, 501 U.S. at 889, 111 S.Ct. 2631.

. See Buckley, 424 U.S. at 124, 96 S.Ct. 612.

. See id. at 125-26, 96 S.Ct. 612 (citations and question marks omitted).

. See Loving v. United States, 517 U.S. 748, 756-57, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996).

. See id. at 756, 116 S.Ct. 1737 ("Even before the birth of this country, separation of powers was known to be a defense against tyranny.”).

. See Schlesinger, 418 U.S. at 213, 94 S.Ct. 2925.

. See Article 66(c), UCMJ.

. See Ryder, 515 U.S. at 182-83, 115 S.Ct. 2031; Calabresi & Larsen, supra note 45, at 1157 n. 12.

. Ryder, 515 U.S. at 188, 115 S.Ct. 2031.

. See id.