# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

### Staff Sergeant JOSHUA K. PLANT
### United States Air Force

### ACM 38274

### 02 July 2014

Sentence adjudged 26 October 2012 by GCM convened at Little Rock Air Force Base, Arkansas. Military Judge: J. Wesley Moore.

Approved Sentence: Dishonorable discharge, confinement for 12 years, and reduction to E-1.

Appellate Counsel for the Appellant: Major Zaven T. Saroyan and Philip D. Cave (civilian counsel).

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel Steven J. Grocki; and Gerald R. Bruce, Esquire.

Before

MARKSTEINER, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

WEBER, Judge:

A panel of officer and enlisted members convicted the appellant, contrary to his pleas and with certain exceptions, of aggravated sexual assault of SO; aggravated sexual assault of a child, SS; child endangerment; and adultery, in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920, 934. The members acquitted the appellant of a charge alleging he used and distributed cocaine. The military judge also entered a finding of not guilty, pursuant to Rule for Courts-Martial 917, to charges and specifications alleging the appellant conspired to distribute cocaine and was derelict in the performance of his duties

by providing alcohol to minors. The adjudged and approved sentence consisted of a dishonorable discharge, confinement for 12 years, and reduction to E-1.

The appellant raises four issues on appeal. The first three assignments of error challenge the factual and legal sufficiency of the court-martial's guilty findings; the fourth alleges his sentence is inappropriately severe. All issues, with the exception of his challenge to the child endangerment conviction, are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We find no error materially prejudicial to a substantial right of the appellant and affirm.

*Background*

The charged actions in this case arise out of a party the appellant hosted at his off-base home. Six people attended the party: the appellant, the appellant's friend MJ, and four young women. The four young women were JM and EH (both at or near 18 years old), SO (16 years old), and SS (15 years old). The appellant's 13-month-old son was asleep in another room of the house throughout the party.

MJ and EH arranged for the young women to come to the appellant's house for the party. They agreed to attend, and most of them knew alcohol and drugs would be present. MJ brought the four young women to the party. At the party, the two men and three of the four young women consumed significant amounts of alcohol; JM remained sober. In addition, SO and SS each snorted two lines of cocaine in the appellant's bathroom. The appellant was found not guilty of the charges involving the cocaine and providing alcohol to his underage guests, but he admitted to knowing they were drinking and using cocaine and to providing SO and SS a straw while they were using cocaine.

SO, in particular, consumed a considerable amount of alcohol. Witness accounts vary significantly as to exactly how much alcohol SO consumed, but most testified that SO was notably intoxicated. SS, who remained closest to SO throughout the evening, testified that SO was "sloppy," "kind of disoriented really," "slurring her words," and "really could barely stand." JM, the one sober person at the party, estimated that SO consumed at least seven to eight drinks of alcohol and testified that SO said she was feeling sick and later had difficulty walking. SO testified that she did not remember large parts of the evening and the following morning due to alcohol consumption, and she was not able to recall how many drinks she had.

There is no evidence that during the party SS or SO gave the appellant any indication they were interested in engaging in any type of sexual activity with him. Eventually, JM asked MJ to take her home, and the other young women came along to also be taken home. By this point, according to JM, SO was stumbling and had to be helped to the car. The group was not able to get far due to flooding from a rainstorm, so they returned to the appellant's home. Soon after returning, SO, SS, and JM retired to the

home's master bedroom, which was normally used by the appellant's deployed housemate. All three young women lay down in the bed. SO immediately fell asleep or passed out. SS also fell asleep. JM remained awake, texting on her cell phone.

Soon after the three lay down, the appellant entered the room, used the bathroom connected to the bedroom, and then lay down in the bed next to SS. JM heard SS and the appellant talking, and she heard SS tell the appellant that she had a boyfriend and therefore agreed to certain sexual activity, but not sex. JM then saw movement coming from the bed near SS's pelvic area before leaving the room for 20 to 30 minutes. When she came back, the appellant and SS were still "doing something" under the covers. At that time, SS separated from the appellant and asked JM to accompany her.

SS took JM to the garage, where she reported that the appellant had digitally penetrated her. As SS and JM spoke, SS realized that she left SO alone in the room with the appellant. When they returned to the bedroom, they found the door locked. After knocking on the door for several minutes, they woke up MJ, who also knocked on the door for a time before the appellant answered. MJ reported that there was nothing to be concerned about and that the appellant and SO were "just messing around." SS and JM nonetheless entered the bedroom and found SO still in bed and "dead asleep." After several minutes of trying, they woke SO and asked if anything sexual happened with the appellant. SO seemed too intoxicated to process this idea, and she denied that anything happened. When EH suggested that SO touch her vagina to see if it felt like she had had sex, SO declined and returned to bed where she either slept or passed out for several hours.

SS and SO later reported this matter to their parents and law enforcement. SS reported that she awoke to find the appellant's fingers in her vagina, and that she did not agree to any sexual activity with the appellant. SO reported that she did not remember much of the evening but that she remembered waking up naked in the room and putting her clothes on. The appellant twice waived his rights to counsel and to remain silent and spoke with investigators. The appellant admitted that he had sexual intercourse with SO but insisted that SO knowingly consented to the activity. He denied having any sexual contact with SS. The appellant also told investigators that both young women had told him they were older than they actually were.

Further relevant facts are detailed for each assignment of error below.

*Factual and Legal Sufficiency – Child Endangerment*

The appellant challenges the sufficiency of his child endangerment conviction, alleging that: (1) he was not so drunk that he could not have cared for his child; (2) he did in fact check on his child during the party; and (3) even if he was too impaired to care for his child, others (including JM, who was sober) were capable of doing so.

We review issues of legal and factual sufficiency de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for factual sufficiency 'is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [this Court] is 'convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

To test legal sufficiency, we are required "to review the evidence in the light most favorable to the Government. If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient." *Reed*, 54 M.J. at 41 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Turner*, 25 M.J. at 324).

As charged, the elements of the offense of child endangerment were:

(1) That the accused had a duty for the care of a certain child;

(2) That the child was under the age of 16 years;

(3) That the accused endangered the child's mental or physical health, safety, or welfare through culpable negligence; and

(4) That, under the circumstances, the conduct of the accused was of a nature to bring discredit upon the armed forces.

*Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 68a.b. (2012 ed.). Actual physical or mental harm to the child was not required. *MCM*, at ¶ 68a.c.(4).

The military judge instructed the members that *endanger* "means to subject one to reasonable probability of harm." Additionally, he instructed the members as follows:

> "Culpable negligence" is a degree of carelessness greater than simple negligence. It is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission. In the context of this offense, culpable negligence may include acts that, when viewed in the light of human experience, might foreseeably result in harm to a child, even though such harm would not necessarily be

natural and probable – would not necessarily be the natural and probable consequence of such acts.

> In this regard, the age and maturity of the child, the conditions surrounding the neglectful conduct, the proximity of assistance available, the nature of the environment in which the child may have been left, the provisions made for care of the child, and the location of the parent or adult responsible for the child relative to the location of the child, among others, may be considered in determining whether the conduct constituted culpable negligence.

The military judge's instructions properly reflected the language accompanying this enumerated offense in the *Manual for Courts-Martial*.

The Government charged the appellant with endangering the welfare of the child "by using alcohol and cocaine." During motions practice, trial defense counsel moved to dismiss the child endangerment charge and specification for failure to state an offense. Trial defense counsel asserted that the mere allegation that the appellant used alcohol and cocaine insufficiently alleged any endangerment to the child. In response, trial counsel asserted that the appellant's use of alcohol and cocaine—when viewed in the light of the considerations laid out in the *Manual for Courts-Martial*—could sufficiently endanger the child. Specifically, trial counsel averred that the Government intended to introduce evidence of the conditions surrounding the appellant's charged use of alcohol and cocaine to demonstrate child endangerment. The military judge denied the defense's motion to dismiss.

Evidence at trial demonstrated the appellant's child was about 13 months old at the time of the party, had not yet begun walking, and was somewhat developmentally delayed. The child was in the appellant's care that night, as the appellant and his wife were in the process of a divorce. The child slept throughout the night, and was not seen, apart from early in the evening when the appellant let the young women into the room to briefly see the child. The appellant did not make any provisions for anyone else to care for the child.

The appellant was acquitted of cocaine use, and the members excepted words from the child endangerment specification alleging that the appellant endangered the child by using cocaine. This leaves the sole basis of the child endangerment conviction the appellant's impairment due to alcohol use. SS testified that the appellant "didn't drink much" and had "maybe a couple of shots." MJ testified that other than JM, he was "pretty sure everybody was pretty well drunk." EH testified that the appellant consumed less alcohol than MJ and others and that he did not drink enough to get "completely . . . wasted." JM, the only sober person at the party, testified that she did not pay attention to how much alcohol the appellant consumed. The appellant did not testify, but in one of

his statements to investigators, he stated he had about two to three mixed drinks per hour throughout the night.

Witness testimony was similarly varied as to whether the appellant could have cared for his child if the child needed something. SS testified that the appellant "wasn't in any condition to take care of his child." MJ testified that he did not recall if the appellant checked on the child, but stated, "I'm sure he was attended to." When asked if he believed the appellant was able to care for the child, MJ responded, "I would say no. . . . I wouldn't have been able to take care of anyone." EH testified that the appellant would have been able to care for his child, based on her own experiences of drinking and using drugs while caring for her own child. JM did not specifically testify as to her perception of the appellant's ability to care for the child, but she stated that had there been an emergency, she would have known how to care for the child and would have taken responsibility for doing so.

We reject the appellant's challenge to the legal sufficiency of this guilty finding. Viewed in the light most favorable to the Government, a rational trier of fact could have found that the appellant endangered the child by his alcohol use. After careful consideration, we also reject the appellant's challenge to the factual sufficiency of the guilty finding.

Standing alone, we question whether the Government proved beyond a reasonable doubt that the appellant's alcohol use impaired him to the extent that the child was endangered. Witnesses differed on their recall as to the appellant's level of intoxication and his ability to care for the child in an emergency. However, our analysis is not limited in this manner. Rather, consideration of the following factors laid out in the *Manual for Courts-Martial* convinces us that the appellant is guilty of child endangerment:

- The age and maturity of the child: The appellant's son was a mere 13 months old and was somewhat developmentally delayed. The child's mother testified that she left the child solely in the appellant's care and that the child was "very" dependent on his caretaker.

- The conditions surrounding the neglectful conduct: This case does not involve a parent relaxing with a drink after putting a child to bed. Rather, the appellant invited people (including strangers) into his house to consume excessive amounts of alcohol with him. His alcohol use, which he estimated at two to three drinks per hour throughout the night, contributed to an environment in which cocaine use and sexual assault occurred. We do not hold that a parent may never consume alcohol while a child is sleeping. Rather, under the facts of this case, the appellant's excessive alcohol use led to a situation in which harm might foreseeably result to the child.

- The proximity of assistance available: In the event the appellant's alcohol use prevented him from personally rendering care or attention to his child in order to avoid harm, there is no reason to believe the appellant could not have telephoned for help. In addition, JM testified that she was capable and willing to care for the child in an emergency. However, the appellant made no arrangements for JM to do so. In addition, the appellant was certainly in no condition to drive had the child needed to be transported somewhere.

- The nature of the environment in which the child may have been left: The Government submitted no evidence that the child's safety, health, or welfare was directly endangered by the cocaine use or sexual assaults that took place that evening. Nonetheless, these activities took place in the home and flowed directly from the appellant's alcohol use. The appellant, influenced by excessive alcohol consumption, allowed illegal drug use to take place directly across the hall from his child and then pursued an agenda of sexually assaulting two young women under the same roof where his child slept.

- The provisions made for care of the child: Again, JM was willing to care for the child, but the appellant made no provisions for her to do so. Hoping, or suggesting after the fact, that a stranger is able and willing to assist in an emergency when that stranger has no duty to do so, hardly absolves the appellant of his parental responsibilities.

- The location of the parent or adult responsible for the child relative to the location of others: The appellant stayed in the home throughout the evening, but evidence at trial indicated the appellant rarely, if ever, checked on his child throughout the party. The appellant specifically denied being in the bathroom, which was directly next to his child's room, while others were in that room using cocaine.

*See MCM*, ¶ 68a.c.(3).

Considering all these factors, and recognizing that we did not personally see and hear the witnesses, we hold the appellant's alcohol use and the circumstances surrounding that alcohol use might foreseeably result in harm to the child, even if such harm would not necessarily be the natural and probable consequences of such acts. We therefore find the appellant's conviction for child endangerment factually as well as legally sufficient.

ACM 38274

*Factual and Legal Sufficiency – Adultery and Aggravated Sexual Assault*

The appellant also challenges the factual and legal sufficiency of the findings of guilty on the adultery and aggravated sexual assault charges. Concerning the adultery charge, he alleges the Government failed to introduce sufficient evidence that the appellant's sexual intercourse with SO was of a nature to bring discredit upon the armed forces. Concerning the aggravated sexual assault of a child specification involving SS, the appellant alleges the evidence indicated SS consented to sexual acts. Concerning the aggravated sexual assault specification involving SO, the appellant alleges that the evidence was insufficient because SO told people immediately after the incident that she did not believe she was raped and because SO was not substantially incapacitated at the time of any sexual activity.

Employing the standards outlined above, the findings of guilty on these charges and specifications are factually and legally sufficient. The appellant's adultery was of a nature to bring discredit upon the armed forces, as it took place without SO's consent, with others knocking on the door out of concern for the 16-year-old girl, and with at least two people present that night aware of his military status. The aggravated sexual assault of a child specification involving SS is factually and legally sufficient, as SS was a 15-year-old girl who was legally incapable of consenting, and the evidence sufficiently demonstrates the appellant knew SS was 15 years old. Finally, the aggravated sexual assault specification involving SO is factually and legally sufficient. Witness accounts concerning exactly what took place that night vary, as might be expected in a situation where alcohol and cocaine were used. However, witness accounts generally establish that SO consumed a substantial amount of alcohol and was either passed out or sound asleep when the appellant entered the bedroom. When SS and JM re-entered the room after the appellant opened the door, she remained in bed, either asleep or passed out. It took several minutes for them to wake her, and even then, SO was unable to fully process what was happening. The only thing witness accounts do not firmly establish was that intercourse took place, but the appellant admitted to that in his statements to investigators. Viewing the evidence in the light most favorable to the Government, the adultery and aggravated sexual assault convictions are legally sufficient. Having made allowances for not having personally observed the witnesses, we are personally convinced of the appellant's guilt on these charges and specifications.

*Sentence Appropriateness*

The appellant lastly challenges the appropriateness of his sentence, citing alleged deficiencies in his treatment in confinement. This Court reviews sentence appropriateness de novo. *Lane*, 64 M.J. at 2. We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by

considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citations omitted). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

The appellant's adjudged and approved sentence is appropriate. He sexually assaulted two young women in short order, while he was married to another woman, and his alcohol use contributed to a situation in which his child's welfare was endangered. The confinement conditions described in the appellant's post-trial affidavit do not render his sentence inappropriate. Having fully considered the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial, we find the sentence appropriate.

*Conclusion*

The approved findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and the sentence are

AFFIRMED.

MARKSTEINER, Senior Judge, participated in this decision prior to his transfer from this Court.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38274