# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, J.A. FISCHER, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**JOSE I. CAUDILLO**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201500197**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 11 February 2015.
**Military Judge:** CDR Marcus Fulton, JAGC, USN.
**Convening Authority:** Commanding General, II Marine Expeditionary Force, Camp Lejeune, NC.
**Staff Judge Advocate's Recommendation:** Col G.W. Riggs, USMC.
**For Appellant:** LT Ryan Aikin, JAGC, USN.
**For Appellee:** LCDR Catheryne Pully, JAGC, USN; Maj Tracey Holtshirley, USMC.

**29 February 2016**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

Per Curiam:

General court-martial officer and enlisted members convicted the appellant of assault consummated by battery, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928—as the lesser included offense of abusive sexual contact alleged under Article 120, UCMJ, 10 U.S.C. § 920. The convening authority approved the panel's announced sentence of a bad-conduct discharge. The appellant asserts the discharge is inappropriately severe. We disagree.

## Background

As a Friday night party in the appellant's barracks room was ending, around 0330, Lance Corporal (LCpl) D.D. fell asleep in a chair listening to the appellant's discussion with the only other remaining guest. He awoke to the appellant lifting him under the arms from the chair. Everyone else was gone. The appellant said LCpl D.D. could sleep in his on-duty roommate's bed. Once in the bed, LCpl D.D. felt the appellant place a blanket over him. LCpl D.D. next awoke to the appellant entering the bed and propping up on one forearm beside him. The room was dark except for the light through an adjoining bathroom's open door.

LCpl D.D. testified that after turning down the blanket, the appellant "took his hand and put it on my stomach and rubbed up and down a couple times, and then went from there to right above my knee, and then rubbed from there up the inside of my thigh and then to my groin area, and he spent maybe a second or two on my groin area and then went up above my beltline...."[1] When the appellant's hand reached his waistline, LCpl D.D. sprang from the bed and pushed him against the wall by the throat.

The brief, wordless confrontation ended with the appellant indicating he wanted to go to the bathroom. Upon hearing the appellant urinating in the bathroom, LCpl D.D. quickly put on the shoes previously removed by the appellant as he slept, grabbed a guitar he had brought to the party, and literally ran to his own barracks building. There he tried to reach his fire team leader and two friends to discuss what had happened. In a panic, he made 32 phone calls between 0408 and 0442 before finally reaching someone at 0445. He sent nine text messages to his fire team leader between 0409 and 0457, but got no response.

The appellant contended, though cross-examination, that several Marines watched an adult female in a sexually explicit, homemade video on LCpl D.D.'s cell phone during the party, but that he had not gotten to see it. During closing arguments, he portrayed the bed incident as his effort to retrieve LCpl D.D.'s phone in order to watch that video. The argument was at odds with LCpl D.D.'s testimony that, instead of feeling like the appellant "was patting or looking for something," the appellant "pretty much felt and cupped my penis and testicles, and squeezed two or three times."[2] LCpl D.D. also explained that where the appellant rubbed "wasn't even close" to the phone located in his "fairly shallow" front pocket along the seam of his pants.[3] "An imprint on the jeans" has even developed because "the phone has been in there for so long."[4]

## Discussion

We conduct *de novo* review for sentence appropriateness, *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006), which "involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). It requires our "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

---

[1] Record at 526-27.

[2] *Id.*

[3] *Id.* at 619.

[4] *Id.* at 615.

2

Despite our significant discretion in reviewing the appropriateness and severity of the adjudged sentence, we may not engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

The members acquitted the appellant of having a sexual intent in touching LCpl D.D. Nonetheless, the assault and battery occurred while LCpl D.D. was vulnerable, under circumstances largely fostered by the appellant's allowing LCpl D.D. to remain with him—instead of waking LCpl D.D. and having him return to his own nearby barracks like all of the other party guests. LCpl D.D.'s reaction and their command's involvement were immediate. For sentencing, the Government focused on the consequential loss of trust in each other by Marines sleeping in the barracks, and the need for general and specific deterrence. The appellant's unsworn statement included an apology for "violating [LCpl D.D.'s] trust,"[5] and hope that LCpl D.D. did not feel like the appellant had following an abuse incident as a child.[6] It also detailed the appellant's difficulties during the previous year—including the death of his older sister, his excessive alcohol use, the removal from his command, and his isolation before trial. He said, "I hope when this is all over, I'm finally able to spend some time with my mother, knowing that she has a serious medical condition as well. . . . I want to be there for my parents and especially my younger sister."[7]

Informed of the appellant's 143 days of pretrial confinement, the members imposed only a bad-conduct discharge instead of the Government's requested sentence of the maximum available confinement (six months), reduction to pay grade E-1, and the discharge. The appellant's substantial clemency matters again included materials related to his pre-service volunteer work and his family's circumstances. The convening authority considered those matters before approving the sentence announced at trial.

With individualized consideration of the appellant, the nature and seriousness of his offense, his overall record of service, and all the matters within the record of trial, we find the convening authority approved an appropriate sentence. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the appellant's substantial rights occurred. Arts. 59(a) and 66(c), UCMJ.

## Conclusion

The findings and sentence as approved by the convening authority are affirmed.

For the Court



R.H. TROIDL
Clerk of Court

---

[5] *Id.* at 874.

[6] "I remember wanting to do something about it, but not really being able to, and it's—it's a feeling of hopelessness that—that comes to me when thinking of what happened to me on that incident . . . ." *Id.* at 868.

[7] *Id.* at 874-75.