*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, KIRKBY, and DALY
Appellate Military Judges

—————————————

**UNITED STATES**
*Appellee*

**v.**

**Jacob R. LONG**
Corporal (E-4), U.S. Marine Corps
*Appellant*

**No. 202200156**

—————————————

Decided: 25 September 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Nicholas S. Henry (arraignment)
Glen R. Hines (trial)

Sentence adjudged 29 April 2022 by a special court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 90 days, and a bad-conduct discharge.

For Appellant:
*Captain Thomas P. Belsky, JAGC, USN*

For Appellee:
*Major Mary C. Finnen, USMC*
*Lieutenant Gregory A. Rustico. JAGC, USN*

Judge DALY delivered the opinion of the Court, in which Senior Judge KISOR and Judge KIRKBY joined.

———————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————————

DALY, Judge:

A military judge sitting alone as a special court-martial convicted Appellant pursuant to his pleas. Appellant pleaded guilty to: two specifications of violating a lawful general order (wrongfully transporting three unsecured firearms on base and possessing drug paraphernalia) in violation of Article 92; three specifications of wrongful possession of controlled substances, two specifications of wrongful distribution of controlled substances, and manufacture with intent to distribute a controlled substance in violation of Article 112a, Uniform Code of Military Justice [UCMJ].[1]

In the sole assignment of error, Appellant asserts his sentence that included a bad-conduct discharge was greater than necessary to achieve the goals of sentencing in the military justice system. We find no error and affirm.

## I. BACKGROUND

On 10 November 2020, Appellant was at another Marine's on-base house when Criminal Investigation Division [CID] agents arrived to investigate illegal narcotics use.[2] The agents discovered drug paraphernalia in a box labeled with Appellant's name in the garage. Appellant subsequently confessed to manufacturing anabolic steroids and admitted ownership of drug paraphernalia. CID agents searched Appellant's vehicle and discovered three unsecured firearms—a Walther PPK/S, a revolver, and a Lusa submachine gun—and a blue congealed mass later identified as tetrahydrocannabinol [THC]. Appellant

---

[1] 10 U.S.C. §§ 892, 912a.

[2] Pros. Ex. 2 at 1.

waived his Article 31(b), UCMJ, rights and authorized a search of his off-base residence; CID agents found the three tabs of LSD and 39 tablets of modafinil.[3]

The same month, Appellant offered to assist the Naval Criminal Investigative Service [NCIS] Special Operations Unit with an ongoing narcotics investigation by serving as a confidential informant.[4] Appellant made five controlled purchases from two different suppliers that led to the seizure of 1.8 kilograms of cocaine and the arrest of nine subjects.[5] At Appellant's court-martial, an NCIS agent testified that Appellant's assistance to that operation contributed to a 60 percent decrease in positive urinalysis results for cocaine in the Camp Lejeune area.[6]

Appellant was charged with three specifications of violating a lawful general order (for transporting unsecured weapons on base, transporting a loaded firearm, and possessing drug paraphernalia); two specifications of wrongful use on divers occasions of lysergic acid diethylamide [LSD] and anabolic steroids; three specifications of wrongful possession (three tabs of LSD, 51 grams of THC, and 39 tablets of modafinil); two specifications of wrongful distribution (some amount of LSD and some amount of anabolic steroids); one specification of wrongful manufacture with intent to distribute, on divers occasions, some amount of anabolic steroids; and, unlawfully carrying a concealed weapon.[7]

Pursuant to a plea agreement, Appellant pleaded guilty in exchange for the charges being withdrawn from a general court-martial and referred to a special court-martial, dismissal of some specifications, and sentence limitations that included a cap on confinement and protection from a fine being adjudged. The convening authority agreed to dismiss, without prejudice, the specifications to which Appellant pleaded not guilty. Additionally, Appellant specifically waived any motions to suppress evidence and any Article 13, UCMJ, motion regarding his legal hold status. The plea agreement is silent on cooperation with law enforcement and his informant status.

In addition to the forum of special court-martial, the plea agreement included the following protections on punishment: for each of the specifications,

---

[3] Modafinil is a schedule IV controlled substance under the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. §§ 801-971).

[4] R. at 140.

[5] Defense Ex. B at 5.

[6] R. at 143.

[7] The charge sheet, 22 Oct 2021.

a specified range of confinement between 75 days and 150 days (to run concurrently), with confinement beyond 1 September 2022 suspended for a period of 12 months after the Entry of Judgment, at which time, unless sooner vacated, that suspended portion would be remitted without further action. The military judge had discretion under the plea agreement to adjudge a bad-conduct discharge, forfeitures, and reduction to E-1, but could not adjudge a fine or any other lawful punishment.[8]

The military judge sentenced Appellant to reduction to paygrade E-1, a bad-conduct discharge, and to be confined as follows: Specification 1 of Charge I, 75 days (wrongfully transporting three unsecured firearms on base), Specification 3 of Charge I, 75 days (possessing drug paraphernalia); Specifications 3, 4, and 5 of Charge II, 75 days (wrongful possession x 3); and Specifications 6, 7, 8 under Charge II, 90 days (wrongful distribution x 2 and wrongful manufacture with intent to distribute). All sentences to confinement ran concurrently pursuant to the plea agreement.[9] Additionally, the military judge recommended that the convening authority suspend the bad-conduct discharge based on the Appellant's family situation… "[b]ut predominately based on what the Court found to be significant cooperation" with NCIS.[10]

The convening authority reviewed the military judge's recommendation for suspending the bad-conduct discharge and Appellant's clemency request for the same but declined to suspend the bad-conduct discharge.[11]

## II. DISCUSSION

Appellant asserts that his unsuspended bad-conduct discharge is "greater than necessary" to achieve the goals of sentencing in the military justice system and was therefore in violation of Article 56(c), UCMJ, and Rule for Courts-Martial [R.C.M.] 1002(f). Specifically, Appellant argues, "[m]ore important than the evidence of Appellant's good character and rehabilitative potential, however, is the fact that the sentence in this case did not account for any of the extraordinary cooperation Appellant provided the government at great risk to

---

[8] Appellate Ex. II at 7-8.

[9] R. at 160; Appellate Ex. II at 8.

[10] R. at 160-163.

[11] Convening Authority Action at 1-2; Entry of Judgment [EOJ] at 2.

himself."[12] The military judge recognized the potential for great risk to Appellant as an informant but the record does not reflect actual incidents where Appellant was at risk, "[w]hat I didn't hear in the evidence was - - just anecdotally in the Court's experience, these controlled b[u]y situations are significantly dangerous situations."[13]

We review sentence appropriateness de novo.[14] This Court may only affirm "the sentence, or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[15] In exercising this function, we seek to assure that "justice is done and that the accused gets the punishment he deserves."[16] The review requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[17] We have significant discretion in determining sentence appropriateness, but may not engage in acts of clemency.[18]

A court-martial may adjudge any punishment authorized, except "[i]f the military judge accepts a plea agreement with a sentence limitation, the court-martial shall sentence the accused in accordance with the limits established by the plea agreement."[19] Additionally, "[t]he punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense."[20] Given the terms of Appellant's plea agreement and the sentence adjudged, we find that the adjudged sentence did not exceed the maximum allowable sentence under the UCMJ, nor did it exceed the terms of the plea agreement.

---

[12] Appellant's Br. at 12.

[13] R. at 142.

[14] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[15] Article 66(d)(1), UCMJ.

[16] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[17] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[18] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

[19] R.C.M. 1002(a)(2).

[20] Art. 56(a), UCMJ.

Appellant committed serious misconduct. He sold LSD to fellow Marines. He manufactured and sold anabolic steroids. He stored the materials for manufacturing steroids at another Marine's on-base house. He unlawfully transported unsecured firearms on base. Appellant's bargained-for bad-conduct discharge is not inappropriately severe. The military judge acknowledged the same, "[i]t's the Court's position to - - adjudge a sentence that effectuates the sentencing philosophies, including good order and discipline. This recommendation [for suspending the discharge] in no way mitigates the severity of these offenses."[21]

The convening authority knew of the severity of the offenses, Appellant's cooperation, and the military judge's recommendation when he considered and did not grant, Appellant's clemency request.[22] The record shows Appellant's punishment was the predictable result of his plea agreement that he negotiated and voluntarily entered into with the convening authority.[23] Appellant voluntarily chose to plead guilty in accordance with the specific terms of an agreement he freely negotiated. As we have previously stated, "we generally refrain from second guessing or comparing a sentence that flows from a lawful pretrial agreement."[24] Accordingly, we find Appellant's assignment of error to be without merit.

---

[21] R. at 142.

[22] EOJ at para. 14.

[23] *United States v. Bocage*, No. 202000206, 2022 CCA LEXIS 311, *7 (N-M. Ct. Crim. App. May 25, 2022).

[24] *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172, *7 (N-M. Ct. Crim. App. Mar. 22, 2016) (unpublished).

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[25]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[25] Articles 59 & 66, UCMJ.