# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, KIRKBY, and DALY
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Dylan J. DIOGUARDI**
Mechanist's Mate Nuclear Third Class Petty Officer
(E-4), U.S. Navy
*Appellant*

**No. 202200223**

_____

Decided: 30 October 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Rachel Trest (arraignment)
Eric A. Catto (trial)

Sentence adjudged 27 June 2022 by a general court-martial convened at Naval Station Mayport, Florida consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 18 months, forfeiture of all pay and allowances, and a dishonorable discharge.[1]

---

[1] Appellant received 129 days of pretrial confinement credit.

For Appellant:
*Lieutenant Commander Daniel C. LaPenta, JAGC, USN* (on brief)

For Appellee:
*Lieutenant Ebenezer K. Gyasi, USN* (on brief)
*Lieutenant Commander James P. Wu Zhu, JAGC, USN* (on brief)

————————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

————————————————

PER CURIAM:

Appellant was convicted, pursuant to his pleas, by a military judge sitting alone as a general court-martial of one specification of attempted sexual abuse of a child involving indecent communication in violation of Article 80, Uniform Code of Military Justice [UCMJ], for communicating indecent language to a fictitious child named "Haylee."[2]

Appellant asserts a single assignment of error: that Appellant's sentence—specifically, the dishonorable discharge—was inappropriately severe. We find no prejudicial error and affirm.

## I. BACKGROUND

On 3 November 2021, Appellant, who was then 20 years old, was using the dating app "Skout" looking for a sexual partner. "Skout" is intended for use by people over the age of 18. At the same time, a law enforcement agent was also on "Skout," posing as a female named "Haylee." Upon discovering "Haylee's" profile, Appellant messaged her on the app. After an exchange of greetings, Appellant continued the conversation by calling her cute. They then proceeded to discuss their ages and intentions.

"Haylee" told Appellant that she was 14 and would be turning 15 in December. Appellant believed that "Haylee" was a 14-year-old girl and had lied about her age to get on the app because her profile said that she was 113 years old.

---

[2] 10 U.S.C. § 880.

The conversation continued and Appellant told "Haylee" that he was looking for "friends with benefits or people to have sex with."[3] They continued messaging on the app and discussed the number of previous sexual partners each had been with.

When "Haylee" asked Appellant what he wanted to do with her, he initially responded "to chill and whatever happens or doesn't happen happens."[4] In response to further questioning, he responded "I want to fuck."[5] Appellant agreed to meet up with "Haylee" at her home and proceeded to drive there. Upon arriving at what he believed was "Haylee's" address, he parked in the driveway, knocked on the door, and was arrested by law enforcement personnel.

Appellant was charged with one specification of attempted sexual assault of a child, one specification of attempted sexual abuse of a child involving sexual contact, and one specification of attempted sexual abuse of a child involving indecent communication.[6] At trial Appellant pleaded guilty only to this last specification, for which the maximum punishment is confinement for 15 years, forfeiture of all pay and allowances, reduction to paygrade E-1, and a dishonorable discharge.

Appellant entered into a plea agreement whereby the convening authority would, in exchange for Appellant's plea of guilty to attempted abuse of a child involving indecent communication, withdraw and conditionally dismiss the other two specifications.[7] In addition to limiting a sentence of confinement to between 6 and 24 months, the terms of the plea agreement allowed the military judge to award forfeitures, a reduction in paygrade, and a punitive discharge.[8]

---

[3] R. at 35.

[4] *Id.*

[5] *Id.*

[6] 10 U.S.C. § 880.

[7] We note specifications 1 and 2 of the charge were withdrawn by the Government pursuant to the plea agreement. On the record, the military judge granted the Government's motion to withdraw those specifications but the specifications were never formally dismissed. The record, as a whole, is clear that it was the intent of the parties that the two specifications to which the Appellant pleaded not guilty were to be dismissed without prejudice to ripen into prejudice upon completion of appellate review. Our opinion here effectuates that intent. Specifications 1 and 2 of the Charge are dismissed and prejudice will attach at the conclusion of appellate review.

[8] Appellate Ex. IV at 5.

During the sentencing phase of the court-martial, Appellant produced two character letters, one from his brother and the other from a childhood friend, that stated they support him and will continue to support him despite being aware of the charge to which he was pleading guilty.[9] Appellant also made an unsworn statement wherein he discussed his difficult childhood, apologized to the Navy and his shipmates, asked the court to recognize that he "sincerely feels guilt, shame, and disgust" for the crime he committed, and described his post-confinement plans.[10]

In its argument on sentencing, the Government requested 24 months' confinement and a bad-conduct discharge. Appellant's trial defense counsel asked the court to adjudge a sentence of six months confinement and a reduction to E-1. The military judge subsequently awarded a reduction to paygrade E-1, confinement for 18 months, and a dishonorable discharge.

## II. DISCUSSION

Appellant asserts his sentence was greater than necessary to achieve the goals of sentencing in the military justice system. We disagree.

We review sentence appropriateness de novo.[11] This Court may only affirm "the sentence, or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[12] In exercising this function, we seek to assure that "justice is done and that the accused gets the punishment he deserves."[13] The review requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[14] We have significant discretion in determining sentence appropriateness but may not engage in acts of clemency.[15]

In determining a sentence, "the court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to

---

[9] Def. Ex. A.

[10] R. at 104.

[11] *United States v. Lane*, 64 M.J. 1, 4 (C.A.A.F. 2006).

[12] Article 66(d)(1)(A), UCMJ.

[13] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[14] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[15] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

maintain good order and discipline in the armed forces."[16] The court must consider such factors as the nature and circumstances of the offenses, the history and characteristics of the accused, impacts on the victims, and impacts on the command.[17] Additionally, the sentence must reflect the seriousness of the offense, promote respect for the law, provide for just punishment, promote adequate deterrence, protect others from future crimes of the accused, and rehabilitate the accused.[18] After examining and weighing each of these factors in the present case, we conclude Appellant's sentence is not inappropriately severe.

Finally, we note that "Appellant's punishment was the predictable result of a [plea agreement] that he negotiated and voluntarily entered into with the convening authority."[19] He has already received the benefit of his bargain, including both the withdrawal and dismissal of his other charged offenses and a significant sentence limitation. As we have previously stated, "we generally refrain from second guessing or comparing a sentence that flows from a lawful pretrial agreement."[20]

---

[16] R.C.M. 1002(f).

[17] R.C.M. 1002(f)(1) and (2).

[18] R.C.M. 1002(f)(3).

[19] *United States v. Bocage*, No. 202000206, 2022 CCA LEXIS 311, *7 (N-M Ct. Crim. App. May 25, 2022) (unpublished).

[20] *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172, *7 (N-M. Ct. Crim. App. Mar. 22, 2016) (unpublished).

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[21]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[21] Articles 59 & 66, UCMJ.