# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

## No. 201600357

————————————

### UNITED STATES OF AMERICA
Appellee

v.

### LAMAR A. FORBES
Aviation Maintenance Administrationman Second Class (E-5),
U.S. Navy
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Commander Heather Partridge, JAGC, USN.
Convening Authority: Commander, Navy Region Mid-Atlantic,
Norfolk, Virginia.
Staff Judge Advocate's Recommendation: Commander Mary B.
Pohanka, JAGC, USN.
For Appellant: Mr. James S. Trieschmann, Jr., Esq.; Lieutenant
Commander William L. Geraty, JAGC, USN.
For Appellee: Captain Brian L. Farrell, USMC; Lieutenant James
M. Belforti, JAGC, USN.

————————————

Decided 24 April 2018

————————————

Before HUTCHISON, FULTON, and SAYEGH, *Appellate Military Judges*

————————————

### PUBLISHED OPINION OF THE COURT

————————————

HUTCHISON, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of one specification of making a false official statement, four specifications of sexual assault, four specifications of assault consummated by a battery, and one specification of the assimilated Virginia law of infected sexual battery, in violation of Articles 107, 120, 128, and 134,

Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 920, 928, and 934 (2012). Following the military judge's findings and pursuant to a pretrial agreement (PTA), the government withdrew the assault consummated by a battery charge and specifications, and one of the sexual assault specifications.[1] The convening authority (CA) approved the adjudged sentence of eight years' confinement, reduction to paygrade E-1, and a dishonorable discharge.

The appellant raises six assignments of error (AOE), the first four of which are related to his sexual assault convictions:[2]

(1) the military judge abused her discretion by accepting the appellant's guilty pleas to Specifications 1, 3, and 4 of Charge II because she failed to address and inform the appellant of well-settled precedent involving consent obtained by fraud;

(2) Specifications 1, 3, and 4 of Charge II fail to state an offense;

(3) Specifications 1, 3, and 4 of Charge II are legally insufficient where the appellant had consensual sex with his partners without informing them that he was Human Immunodeficiency Virus (HIV) positive;[3]

(4) if Articles 120(b) and 128(a),[4] UCMJ, require affirmative disclosure of HIV before sexual intercourse, then the term "bodily harm" is unconstitutionally vague;

---

[1] The withdrawn specifications were dismissed without prejudice following announcement of the sentence. *See* Record at 147.

[2] In his brief the appellant erroneously refers to Specifications 1, *2*, and 4 of Charge II in AOEs (1) – (3). Appellant's Brief of 27 Mar 2017 (emphasis added). Specification 2 of Charge II was withdrawn after the military judge entered findings and dismissed without prejudice upon announcement of the sentence. *See* Record at 147. The appellant remains convicted of Specifications 1, *3*, and 4 of Charge II.

[3] The appellant entered unconditional guilty pleas to Specifications 1, 3, and 4 of Charge II. *See* Record at 90; Appellate Exhibit (AE) XXIII. Therefore, "the question presented 'must be analyzed in terms of providence of his plea, not sufficiency of the evidence.'" *United States v. Smith,* 60 M.J. 985, 986 (N-M. Ct. Crim. App. 2004) (quoting *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996)). Our analysis of the appellant's first AOE addresses the providence of the plea, and renders this AOE moot.

[4] The appellant incorrectly refers to Article 128(b)(2), UCMJ, in his brief. *See* Appellant's Brief at 17. The appellant was convicted of a violation of Article 128(a), assault consummated by a battery, which also contains the term "bodily harm." MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2012 ed.), Part IV, ¶ 54.a(a).

(5) the military judge erred in finding that a preliminary hearing officer's (PHO's) investigation cured an initial review officer's (IRO's) partiality for purposes of Rule for Courts-Martial (R.C.M.) 305(k)[5] credit; and

(6) the appellant's sentence is inappropriately severe and is disproportionate to cases involving the same conduct.

After careful consideration of the record of trial and the parties' pleadings, we conclude the findings and sentence are correct in law and fact, and that no error materially prejudiced the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

In February 2012, the appellant tested positive for HIV and was counseled several times by medical providers to refrain from engaging in sexual activity without first advising any prospective sexual partner that he carried HIV. From July 2013 to June 2015, however, the appellant engaged in unprotected sexual intercourse with four different women without telling any of the women that he was HIV-positive. Each of the women consented to intercourse with the appellant, but did so without knowledge of his positive HIV status. When interviewed by Naval Criminal Investigative Service (NCIS) agents concerning his sexual activity, the appellant made a false official statement, indicating that he only had sex with three women since testing positive for HIV in 2012.[6]

Following his interview with NCIS, the appellant was ordered into pretrial confinement. The military judge denied the appellant's motion for release from pretrial confinement but granted him R.C.M. 305(k) confinement credit after concluding that the IRO failed to comply with the procedural requirements of R.C.M. 305(i)(2)(D)[7] and abused his discretion by simply ratifying the command's confinement decision.[8] The military judge awarded the appellant two additional days credit for each day of pretrial confinement from the time the appellant was placed into pretrial confinement until completion of the Article 32, UCMJ, PHO's report—132 days credit.

The appellant entered into a PTA with the CA and entered unconditional guilty pleas to all charges and specifications. During the providence inquiry

---

[5] RULE FOR COURTS-MARTIAL 305(k), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

[6] Prosecution Exhibit (PE) 4; AE XXVI at 18.

[7] R.C.M. 305(i)(2)(D) requires that the IRO's findings and conclusions "be set forth in a written memorandum." The IRO's letter "was not dated, was not signed, did not indicate which articles [he] believed the Accused had violated, and did not indicate any basis for continued pretrial confinement." AE VI at 2.

[8] *See* AE VI at 3-4.

the appellant admitted that he intentionally hid his HIV status from his sexual partners and that he lied to NCIS.

We address the remaining relevant facts in the discussion.

## II. DISCUSSION

### A. Sexual assault

This is a case of first impression. Neither the parties nor we have identified a precedent for convicting a service member of sexual assault for failing to inform a sexual partner of his HIV status before engaging in an otherwise-consensual sexual act. That is not to say, however, that conduct such as the appellant's has gone unpunished in the military; there is much precedent for convicting service members for similar conduct. Our superior court first examined crimes related to HIV-exposure in two cases decided on the same day in 1989. In *United States v. Womack*, the Court of Military Appeals (CMA) upheld a conviction for violating an order to inform all present and future sexual partners of the member's infection. 29 M.J. 88, 89 (C.M.A. 1989). In *United States v. Stewart*, the CMA affirmed a guilty plea for aggravated assault where the appellant wrongfully engaged in sexual intercourse "while knowing he was infected with [HIV] and knowing that said virus can be sexually transmitted[.]" 29 M.J. 92, 93 (C.M.A. 1989). Since these two cases, the most common methods of charging HIV-related misconduct under the UCMJ have included aggravated assault under Article 128, or violation of a "safe-sex" order under Article 90 or Article 92, UCMJ.[9]

However, a recent decision by the Court of Appeals for the Armed Forces (CAAF) has called into question the validity of charging HIV-related cases as aggravated assaults and, more importantly, has given rise to the charging scheme employed in this case. In *United States v. Gutierrez*, the CAAF ruled that simply engaging in unprotected sexual intercourse was not sufficient to sustain Gutierrez's conviction for assault with means or force likely to produce death or grievous bodily harm. 74 M.J. 61, 63 (C.A.A.F. 2015). According to expert testimony, exposure to the risk of HIV transmission was remote—at most a 1-in-500 chance—and unlikely to produce death or grievous bodily harm. *Id.* But the CAAF affirmed a conviction for the lesser included offense of assault consummated by a battery. The CAAF explained that "[t]he offense of assault consummated by battery requires that the accused 'did bodily harm,'" *id.* at 68 (quoting MCM, Part IV, ¶ 54.b.(2)), and that "bodily harm" is simply

---

[9] *See* Derek J. Brostek, *Prosecuting an HIV-Related Crime in a Military Court-Martial: A Primer*, 2009 Army Law. 29, 29; s*ee also United States v. Johnson*, 30 M.J. 53, 56 (C.M.A. 1990) ("it is now beyond cavil that it is permissible under the Code to charge aggravated assault, where the means alleged as likely to produce death or grievous bodily harm is HIV." (citations omitted)).

"any offensive touching of another, however slight." *Id.* (quoting MCM Part IV, ¶ 54.c.(1)(a)). Therefore, Gutierrez's conduct—engaging in otherwise-consensual sexual activity without telling his partners that he had HIV—included an "offensive touching to which his sexual partners did not provide meaningful informed consent" because "'[w]ithout disclosure of HIV status there cannot be a true consent.'" *Id.* (quoting *R. v. Cuerrier*, [1998] 2 S.C.R. 371, 372 (Can.)).

Here, in explicit reliance on the CAAF's holding in *Gutierrez*, the government charged the appellant with both assault consummated by battery in violation of Article 128(a), UCMJ, and *sexual assault by bodily harm* in violation of Article 120(b)(1)(B), UCMJ. In a bench memorandum, the trial counsel explained that since "failure to disclose an accused's HIV status constituted an offensive touching because the accused's partners did not provide informed meaningful consent, 'the appropriate charges would be either 1) sexual assault by bodily harm; or 2) assault consummated by battery.'"[10]

Against this historical and procedural backdrop, we examine each of the appellant's claims.

### 1. Providence of the appellant's pleas

We review a military judge's acceptance of a guilty plea for an abuse of discretion, reversing only if the "record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citation omitted). There is a substantial basis in law to question a guilty plea if the appellant has "pled guilty to conduct that was not criminal." *United States v. Ferguson*, 68 M.J. 431, 433 (C.A.A.F. 2010). Likewise, a military judge abuses her discretion if she accepts an appellant's guilty plea based upon "an erroneous view of the law." *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) (citation omitted). "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *Moon,* 73 M.J. at 386 (citations and internal quotation marks omitted).

The appellant argues that there is a substantial basis in law to question the guilty plea because the military judge relied exclusively on *Gutierrez*—which in turn relied on "only a Canadian case"—in defining consent as an element of sexual assault.[11] In doing so, the appellant contends, the military judge ignored "years of well-settled precedent and case law . . . recogniz[ing]

---

[10] AE XVIII at 3 (quoting *United States v. Herrmann*, 75 M.J. 672, 678 n.1 (A. Ct. Crim. App. 2016) (Wolfe, J., concurring in the result)) (additional citation omitted), *aff'd*, 76 M.J. 432 (C.A.A.F. 2017), *cert. denied,* 138 S. Ct. 487 (2017).

[11] Appellant's Brief at 7.

the distinction between fraud in the inducement and fraud in the factum."[12] We disagree.

First, we reject the appellant's suggestion that the CAAF's holding in *Gutierrez* is rooted only in Canadian law. The concept that an "offensive touching" includes sexual activity with someone who is unaware of their partner's HIV status is also rooted in military case law. In *United States v. Joseph*, after first analyzing the Manual for Courts-Martial's definition of *bodily harm*, the CMA concluded that there was "no reason why a factfinder [could not] rationally find it to be an 'offensive touching' when a knowingly HIV-infected person has sexual intercourse with another, without first informing his sex partner of his illness[.]" 37 M.J. 392, 395 (C.M.A. 1993). The CMA further recognized that "'informed consent' can convert what might otherwise be an offensive touching into a non-offensive touching." *Id.* at 396 n.5.

Since *Joseph*, military courts have reinforced this interpretation of offensive touching. In *United States v. Dacus*, the CAAF affirmed an aggravated assault conviction where the appellant stipulated that the "act of sexual intercourse while HIV-positive without informing [his partner] constitute[d] an offensive touching with another." 66 M.J. 235, 236 (C.A.A.F. 2008). Our court similarly had "no difficulty in concluding that the military judge . . . could find an assault consummated by a battery—an offensive touching having occurred when the appellant, knowing that he was HIV-infected, engaged in sexual intercourse with [his partner] without first informing her of his illness[.]" *United States v. Klauck*, No. 9501422, 1996 CCA LEXIS 509, at *5, unpublished op. (N-M. Ct. Crim. App. 21 Jun 1996), *aff'd* 47 M.J. 24 (C.A.A.F. 1997).

Indeed, a line of assault and aggravated assault cases that came after *Joseph* used this same formulation to establish the bodily harm element of the offense. *See e.g., United States v. Upham*, 66 M.J. 83, 87 (C.A.A.F. 2008) (affirming assault consummated by a battery conviction as a lesser included offense of aggravated assault after concluding that the accused committed an offensive touching when he engaged in unprotected sex without informing his partner of his HIV status); *United States v. Tootle*, No. 9801945, 2005 CCA LEXIS 371, at *15, unpublished op. (N-M. Ct. Crim. App. 30 Nov 2005) ("It is well settled that an HIV-positive soldier can be convicted of assault under Article 128, UCMJ, for engaging in unwarned, unprotected sexual intercourse." (citations omitted)), *aff'd*, 64 M.J. 176 (C.A.A.F. 2006).

We recognize, of course, that *Gutierrez* expressly overruled *Joseph*. But the CAAF's concern in *Gutierrez* was the *Joseph* court's aggravated assault

---

[12] *Id.* at 8 (citation omitted).

analysis. In *Gutierrez*, the CAAF found that the critical question in determining whether there was a means or force likely to produce death or grievous bodily injury, was the risk of *exposure* to HIV rather than the "likelihood of the virus causing death or serious bodily harm if it invades the victim's body." *Joseph,* 37 M.J. at 397. So while the CAAF rejected *Joseph's* aggravated assault analysis, it did not change its legal conclusion that sexual activity by an HIV-positive person without informing his or her partner constitutes an offensive touching.

Second, the fact that the CAAF did not tie its rationale in *Gutierrez* to traditional fraud analysis is of no import. As a service court of criminal appeals, we do not have the discretion to depart from the CAAF's precedent. "[I]f a precedent of [a superior court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving [the superior court] the prerogative of overruling its own decisions." *Agostini v. Felton,* 521 U.S. 203, 237 (1997) (internal quotation marks and citation omitted). Thus, the CAAF's holding in *Gutierrez*—that an HIV-positive individual commits an offensive touching, and therefore bodily harm, when he engages in sexual intercourse without first informing his partner of his HIV status—is binding on this court and on the military judge who accepted the appellant's guilty pleas. Indeed, the only difference between *Gutierrez* and this case is that, here, a "sexual act" is an additional element.

Therefore, the military judge would have abused her discretion here only if applying *Gutierrez* to a *sexual assault case* represented an "erroneous view of the law." *Weeks*, 71 M.J. at 46.

To resolve whether the military judge properly relied on *Gutierrez* in accepting the appellant's pleas to sexual assault, we first look to the appellant's providence inquiry to ensure the military judge properly apprised the appellant regarding the "nature of the charges brought against him[,]" including the elements and definitions of sexual assault by bodily harm. *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008). For each sexual assault specification, the military judge advised the appellant that the elements were: 1) that he committed a sexual act, to wit: penetrating his sexual partner's vulva with his penis; 2) that he did so by causing bodily harm, to wit: penetrating her vulva with his penis without previously informing her that he carried HIV; and 3) that he did so without her consent.[13]

Next, consistent with the statutory definition of bodily harm contained in Article 120(g)(3), UCMJ,[14] the military judge defined bodily harm as "any

---

[13] *See* Record at 97-99.

[14] 10 U.S.C. § 920(g)(3).

offensive touch[ing] of another, however slight, including any nonconsensual sexual act or nonconsensual sexual contact."[15] She then defined consent, consistent with the statutory definition contained in Article 120(g)(8), UCMJ,[16] as "a freely given agreement to the conduct at issue by a competent person."[17] These definitions provided the appellant with a clear and correct understanding of the legal definitions underlying his sexual assault offenses. In addition to these statutory definitions, the military judge informed the appellant that *Gutierrez* held "a person who is unaware of the HIV status of her sexual partner cannot provide meaningful, informed consent . . . ."[18] After hearing the elements of the offenses and the applicable definitions, the appellant chose to plead guilty and admitted that his conduct—with each of the three women named in the specifications—amounted to an offensive touching and that the women did not provide meaningful, informed consent because he did not tell them that he was HIV-positive.

Although we recognize that in *Gutierrez*, the CAAF was affirming an Article 128, UCMJ, conviction, we see no reason why the CAAF's holding is not equally applicable in an Article 120(b)(1)(B), UCMJ, case. First, we see no distinction between "bodily harm" as defined by statute in Article 120(g)(3), UCMJ, and the Manual's definition of "bodily harm" as it relates to Article 128, UCMJ.[19] Both require an "offensive touching," and the CAAF has concluded that sexual intercourse without informing your partner that you are HIV-positive constitutes an "offensive touching." Thus, the military judge was bound by the CAAF's ruling in *Gutierrez*, and was not therefore laboring under an erroneous view of the law when she accepted the appellant's plea based upon his admission that he had sexual intercourse with three women without telling them that he was HIV-positive.[20]

---

[15] Record at 100.

[16] 10 U.S.C. § 920(g)(8).

[17] Record at 100.

[18] *Id.* at 103.

[19] *See* MCM, Part IV, ¶ 54.c.(1)(a) ("Bodily harm means any offensive touching of another, however slight."). Likewise, we interpret the word "includ[ing]" in Article 120(g)(3)'s definition of "bodily harm" to mean "includ[ing] but is not limited to[.]" *See* 10 U.S.C. § 101(f)(4) ("Rules of construction In this title --(4) 'includes' means 'includes but is not limited to'"). *See also* 2016 MCM, R.C.M. 103, Discussion.

[20] We make no distinction between the appellant's failure to inform his sexual partners that he was HIV-positive and any affirmative statement denying that he was HIV-positive or intimating that he was *not* HIV-positive. *Gutierrez* does not address the situation where an HIV-positive individual engages in sexual activity after denying his positive status. It is enough, under *Gutierrez*, that the appellant simply did not tell his partners that he was HIV-positive.

Second, the CAAF found that an individual who was not informed of her sexual partner's positive HIV-status could not provide "meaningful, informed consent" because "[w]ithout disclosure of HIV status there cannot be a *true consent*." *Gutierrez*, 74 M.J. at 68 (emphasis added) (citation and internal quotation marks omitted). Although the term "consent" is defined by statute in Article 120(g)(8), UCMJ, the military judge's application of *Gutierrez* is consistent with the statutory definition. There is no reason to conclude "consent" means anything different in the context of an assault consummated by a battery than it does for a sexual assault.

We conclude, therefore, that the CAAF's holding in *Gutierrez* applies here, where the appellant pleaded guilty to sexual assault by bodily harm. Since the military judge correctly applied this binding case law and the appellant admitted each element of every offense, there is no substantial basis in law or fact to question the appellant's guilty pleas.

*2. Failure to state an offense*

Whether a charge and specification state an offense is a question of law that we review *de novo*. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006). A specification states an offense if it alleges, either expressly or by implication, every element of the offense, so as to give the accused notice and protection against double jeopardy. *Id.* (citing *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994)).

The statutory elements of sexual assault by bodily harm are: 1) a person commits a sexual act upon another person; and 2) the person did so by causing bodily harm to that other person.[21] Sexual act is defined as "contact between the penis and the vulva or anus or mouth, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight[.]"[22] And, as we note above, bodily harm is defined as "any offensive touching of another, however slight, including any nonconsensual sexual act or nonconsensual sexual contact."[23]

The appellant asserts that Specifications 1, 3, and 4 of Charge II fail to state an offense because the charged sex acts with each of the women were consensual and therefore not offensive. Rather, "[w]hat was offensive was the exposure, however slight, to HIV."[24] The appellant maintains that the specifications do not contain the essential elements of the offense because they

---

[21] Article 120(b)(1)(B), UCMJ; 10 U.S.C. § 920(b)(1)(B).

[22] Article 120(g)(1)(A), UCMJ; 10 U.S.C. § 920(g)(1)(A).

[23] Article 120(g)(3), UCMJ; 10 U.S.C. § 920(g)(3).

[24] Appellant's Brief at 11.

do not allege a sexual act that "would legally constitute an offensive touching."[25] Again, we disagree.

Each of the sexual assault specifications to which the appellant pleaded guilty expressly alleged both the offensive acts—penetration of the vulva with the appellant's penis—and the "bodily harm"—engaging in such acts without previously informing his partners that he carries HIV. As we noted above, the CAAF has determined that an HIV-positive service member commits an "offensive touching" when he performs a sexual act on a partner without informing the partner of his HIV-status. *Gutierrez*, 74 M.J. at 68. Therefore, contrary to the appellant's assertion, the specifications do allege a sexual act that would constitute an offensive touching because each expressly alleges as bodily harm that the appellant engaged in a sexual act without previously informing his partners that he carried HIV. The specifications expressly allege every element of the offense and "clearly placed [the appellant] on notice of that against which he had to defend." *United States v. Rauscher*, 71 M.J. 225, 226-27 (C.A.A.F. 2012). Therefore, we conclude that Specifications 1, 3, and 4 of Charge II state an offense.

*3. Constitutionality of Article 120(b)(1)(B) and 128(a)*

The appellant next contends that Articles 120(b)(1)(B) and 128(a), UCMJ, are unconstitutionally vague if, as the CAAF found in *Gutierrez*, failure to disclose HIV-status to a sexual partner constitutes an "offensive touching" because there is no way for a person of common intelligence to determine what exactly they should disclose to a sexual partner. The appellant argues that such a broad understanding of "offensive touching" would require individuals to disclose any disease or ailment, or else risk committing a bodily harm.

The constitutionality of a statute is a question of law, which we review *de novo*. *United States v. Disney*, 62 M.J. 46, 48 (C.A.A.F. 2005). Due process requires a person have fair notice that an act is forbidden and subject to criminal sanctions before he can be prosecuted for it. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003). "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his or her contemplated conduct is proscribed." *Parker v. Levy*, 417 U.S. 733, 757 (1974) (citation and internal quotation marks omitted). Rather, laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). We look to multiple sources to find fair notice, including "the MCM, federal law, state law, military case law, military custom and usage, and military regulations." *Vaughan*, 58 M.J. at 31 (citations omitted). In assessing a vagueness challenge, "a statute must of

---

[25] *Id.* at 12.

necessity be examined in light of the conduct with which the defendant is charged." *Levy*, 417 U.S. at 757 (citation and internal quotation marks omitted).

We conclude that the appellant had actual knowledge and was on fair notice that his conduct was prohibited. Article 120(b)(1)(B), UCMJ, prohibits a service member from committing "a sexual act upon another person by causing bodily harm to that other person."[26] Likewise, the relevant portion of Article 128(a), UCMJ, prohibits committing bodily harm to a certain person and that the bodily harm was done with unlawful force or violence.[27] As we noted above, bodily harm is defined as an offensive touching, and over two decades of military case law have determined that an HIV-positive service member commits an offensive touching when he commits a sexual act without informing his sexual partner about his HIV status. *See e.g. Gutierrez,* 74 M.J. at 68; *Dacus,* 66 M.J. at 236; *Upham,* 66 M.J. at 87; *Joseph*, 37 M.J. at 395. Consequently, the appellant was on notice and reasonably understood that his conduct was prohibited.

As for the appellant's concern that our application of *Gutierrez* might give rise to a host of sexual assault prosecutions for service members who fail to disclose other ailments, such as the human papillomavirus—or even the common cold—we need not determine here what other conditions, if any, would vitiate consent if not revealed to a sexual partner. First, as we noted above, *Gutierrez* simply reaffirmed the long-standing precedent that failure to disclose *HIV-status* to a sexual partner constituted an "offensive touching." Whether the failure to disclose other ailments to a sexual partner constitutes an offensive touching was not before the court in *Gutierrez* and is not before us in this case. Second, "irrespective of whether a statute could be read to be vague in some other hypothetical case, an appellant has no standing to challenge the facial validity of a statute that clearly applies to his conduct." *United States v. Corcoran,* No. 201400074, 2014 CCA LEXIS 901, at \*24, unpublished op. (N-M. Ct. Crim. App. 23 Dec 2014) (citing *United States v. McGuinness*, 35 M.J. 149, 152 (C.M.A. 1992)). Since the appellant's conduct was clearly prohibited by Articles 120(b)(1)(B) and 128(a), UCMJ, he lacks standing to claim these statutes are facially void for vagueness.

---

[26] 10 U.S.C. § 920(b)(1)(B).

[27] MCM, Part IV, ¶ 54.b.(2).

**B. R.C.M. 305(k) credit**

The appellant argues that the military judge erred when she failed to grant additional R.C.M. 305(k) credit for the period following issuance of the PHO's report until she ruled on the appellant's motion for release from pretrial confinement. The appellant contends that since the PHO's duties did not include determining or recommending whether continued confinement was necessary, his report could not have satisfied the requirements of R.C.M. 305.

The government contends that the appellant expressly waived his right to additional administrative confinement credit under R.C.M. 305(k). We agree.

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano,* 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)) (additional citations omitted). When an appellant "intentionally waives a known right at trial, it is extinguished and may not be raised on appeal." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citations omitted). Administrative credit under R.C.M. 305(k) can be waived.

In the PTA, the appellant specifically agreed "to waive all motions except those that are otherwise non-waivable[.]"[28] The military judge asked the appellant if he discussed this waiver provision with his defense counsel, and the appellant acknowledged that he did. Finally, following the military judge's findings, when asked whether the appellant had been subject to any illegal pretrial confinement and specifically referencing the litigated R.C.M. 305(k) ruling, the trial defense counsel responded, "I don't contest your ruling on that one."[29] Therefore, we conclude the appellant intentionally relinquished his right to raise these issues on appeal and we need not reach the issue of whether the military judged erred in failing to grant additional confinement credit under R.C.M. 305(k). We have also considered whether we should exercise our authority to consider the appellant's claim under Article 66(c), UCMJ, in spite of the appellant's waiver. *See United States v. Chin*, 75 M.J. 220 (C.A.A.F. 2016). Given the facts and circumstances presented here, we decline to do so.

**C. Inappropriately severe and disparate sentence**

Finally, the appellant claims that his sentence to eight years' confinement is both disparate, when compared to other closely related cases, and inappropriately severe. We disagree.

---

[28] AE XXIII at 4.

[29] Record at 149.

An appellant seeking relief for a disparately severe sentence "bears the burden of demonstrating that any cited cases are closely-related to his or her case and that the sentences are highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (internal quotation marks omitted). If the appellant shows both that his case is "closely related" and his sentence is "highly disparate," then the burden shifts to the government to show there is "a rational basis for the disparity." *Id.; see also United States v. Durant*, 55 M.J. 258, 262-63 (C.A.A.F. 2001). Cases are "closely related" when they "involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design." *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994).

The appellant cites four separate cases[30] that he believes are "closely related" in support of his claim that his sentence to eight years' confinement is disparately severe. These cases were convened by four different convening authorities, from two different services, spanning a period of 10 years. These cases do not constitute closely related offenses. The appellant cannot identify any "close relationship" between his case and the other four, except to show that, like his case, all involve a servicemember engaging in sexual activity without first informing his sexual partner that he was HIV-positive. Far from being "co-actors" or "servicemembers involved in a common or parallel scheme," the appellant's offenses and those committed by the other four servicemembers took place at different times, at different commands, in different parts of the world, and involved unrelated sexual partners under differing factual circumstances. *Lacy*, 50 M.J. at 288. Therefore, we find no "direct nexus" between the appellant's misconduct and that of his proposed

---

[30] *See United States v. Stevens*, No. 201300116, 2013 CCA LEXIS 913, unpublished op. (N-M. Ct. Crim. App. 31 Oct 2013) (servicemember convicted of three specifications of assault consummated by a battery in violation of Article 128, UCMJ, was sentenced to confinement for 18 months for engaging in unwarned and unprotected sexual acts with three individuals) (per curiam); *United States v. Herndon*, No. 201000066, 2010 CCA LEXIS 478, unpublished op. (N-M. Ct. Crim. App. 15 Jun 2010) (servicemember convicted of aggravated assault in violation of Article 128, UCMJ, was sentenced to 15 months' confinement for engaging in sexual acts without informing his sexual partners of his HIV-positive status) (per curiam); *United States v. Napier*, No. 200300805, 2005 CCA LEXIS 189, unpublished op. (N-M. Ct. Crim. App. 22 Jun 2005) (servicemember convicted of four specifications of Article 128, UCMJ, was sentenced to, among other things, four years of confinement for engaging in unprotected sexual intercourse without first informing his sexual partner of his HIV-positive status); *United States v. Gutierrez*, No. 37913, 2015 CCA LEXIS 525, unpublished op. (A.F. Ct. Crim. App. 23 Nov 2015) (in light of the CAAF's holding discussed *supra*, the Air Force Court of Criminal Appeals affirmed a sentence of six years' confinement for the servicemember's convictions for assault consummated by a battery in violation of Article 128, UCMJ).

comparison cases, especially when considering the appellant pleaded guilty to *sexual assault*, in violation of Article 120, UCMJ, rather than aggravated assault or assault consummated by a battery, in violation of Article 128, UCMJ—as did those servicemembers in the cases cited by the appellant. *Id.*

Even assuming, *arguendo*, that the appellant was able to meet his burden to demonstrate that the cited cases were "closely related," we conclude he has not shown that his sentence is "highly disparate." The test for whether a sentence is highly disparate "is not limited to a narrow comparison of the relative numerical values of the sentences at issue, but also may include consideration of the disparity in relation to the potential maximum punishment." *Lacy*, 50 M.J. at 289. The appellant alleges that among the cases he cites as "closely related," *Stevens* is most like the appellant's and represents "the same fact pattern as the present case."[31] Airman Stevens engaged in sexual activity with three different women, including two other Sailors, while he was HIV-positive. He was convicted, pursuant to his pleas, of three specifications of violating an order not to engage in sexual activity without first informing his partners that he was HIV-positive, in violation of Article 92, UCMJ,[32] and three specifications of assault consummated by a battery, in violation of Article 128, UCMJ. *Stevens*, 2013 CCA LEXIS 913, at \*1-3. Based on these convictions, Stevens faced a maximum punishment of three years' confinement, and was sentenced to 18 months confinement—one half the maximum authorized for the offenses to which he pleaded guilty. The appellant, conversely, was convicted of three specifications of sexual assault, one specification of committing an infected sexual battery in violation of Virginia law, and one specification of making a false official statement. The appellant faced a maximum sentence of 96 years confinement, yet was sentenced to only eight years. Therefore, we conclude that any difference in the confinement awarded the appellant did not produce sentences that were "highly disparate."

We next consider whether the appellant's sentence to eight years' confinement is inappropriately severe. We review sentence appropriateness *de novo. United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). This court "may affirm only . . . the sentence or such part or amount of the sentence, as it . . . determines, on the basis of the entire record, should be approved." Art. 66(c), UCMJ. "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires our "individualized consideration of the particular accused on the basis of the

---

[31] Appellant's Brief at 27.

[32] 10 U.S.C. § 892.

nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotations marks omitted). While we have significant discretion in determining sentence appropriateness, we do not engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

The appellant deliberately put four different women at risk of contracting HIV. One of these women, LK, informed the appellant that she was taking medication that weakened her immune system as a result of a recent kidney transplant. The appellant assured her that he "wouldn't do anything to . . . jeopardize it", yet had sex with her anyway without disclosing his status.[33] Another women, AS, disclosed to the appellant that she had a family member that was HIV-positive, and discussed getting tested with the appellant prior to engaging in intercourse with him. But the appellant "informed her that [he] was clean, when [he] was in fact HIV-positive."[34] These two situations betray the callousness and deceit of the appellant, and are particularly aggravating. Additionally, the appellant brazenly continued to have frequent, unprotected sexual intercourse with two of the women despite knowing he was actively being investigated by NCIS.

Having given individualized consideration to the nature and seriousness of the appellant's crimes, as well as the evidence submitted in extenuation and mitigation, we conclude the sentence is not inappropriately severe and is appropriate for the appellant and his offenses. *Snelling*, 14 M.J. at 268. We also note that the appellant specifically bargained for a PTA that allowed for the approval of the sentence of which he now complains.[35] Granting sentence relief at this point would be to engage in clemency, which is the sole prerogative of the CA. *Healy*, 26 M.J. at 395-96.

### III. CONCLUSION

The findings and sentence are affirmed.

Judge FULTON and Judge SAYEGH concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[33] Record at 222.

[34] PE 14 at 3.

[35] *See* AE XXIV at 1.