# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38519 (f rev)**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jaime R. RODRIGUEZ**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 9 February 2023

————————————

*Military Judge:* Donald R. Eller, Jr. (trial); Andrew Kalavanos (rehearing on sentence).

*Approved sentence:* Bad-conduct discharge, confinement for 6 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 29 March 2017 by GCM convened at Joint Base San Antonio-Lackland, Texas.

*For Appellant:* Major Matthew L. Blyth, USAF; Mark C. Bruegger, Esquire.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Joshua M. Austin, USAF; Major Cortland T. Bobcynski, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire; MacCaelin A. Sedita, Legal Intern.[1]

Before JOHNSON, POSCH, and RICHARDSON, *Appellate Military Judges.*

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge POSCH and Judge RICHARDSON joined.

————————————

[1] Mr. Sedita was supervised by attorneys admitted to practice before the court.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

JOHNSON, Chief Judge:

Appellant's case is before this court for the sixth time. In June 2013, Appellant was found guilty in accordance with his pleas of 15 specifications of violating a lawful general regulation; one specification of violating a lawful order; one specification of making a false official statement; one specification of consensual sodomy; two specifications of obstructing justice; and two specifications of adultery in violation of Articles 92, 107, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 925, 934.[2,3] Additionally, a general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification of aggravated sexual assault by causing bodily harm;[4] one specification of abusive sexual contact by causing bodily harm;[5] one specification of nonforcible sodomy;[6] one specification of aggravated sexual contact by using strength; one specification of wrongful sexual contact; and one specification of indecent exposure in violation of Articles 120 and 125, UCMJ, 10 U.S.C. §§ 920, 925. The court members sentenced Appellant to a dishonorable discharge, confinement for 27 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority disapproved the adjudged forfeitures, but otherwise approved the findings and the adjudged sentence.

In this court's original opinion, *United States v. Rodriguez*, No. ACM 38519, 2015 CCA LEXIS 143 (A.F. Ct. Crim. App. 14 Apr. 2015) (unpub. op.) (*Rodriguez I*), we remanded the record to the convening authority for new post-trial

---

[2] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2008 ed.). Unless otherwise indicated, all other references to the UCMJ and the Rules for Courts-Martial refer to the versions contained in the *Manual for Courts-Martial, United States* (2016 ed.).

[3] Appellant pleaded guilty by exception and substitution to one specification of violation of a lawful general regulation, and pleaded guilty by exception to one specification of obstructing justice.

[4] The court members acquitted Appellant of the charged greater offense of rape.

[5] The court members acquitted Appellant of the charged greater offense of aggravated sexual contact.

[6] The court members acquitted Appellant of the charged greater offense of forcible sodomy.

processing and action. The convening authority again disapproved the adjudged forfeitures, but otherwise approved the findings and the adjudged sentence.

On further review, *United States v. Rodriguez*, No. ACM 38519 (f rev), 2016 CCA LEXIS 416 (A.F. Ct. Crim. App. 13 Jul. 2016) (unpub. op.) (*Rodriguez II*), this court set aside and dismissed five of the six litigated specifications of which Appellant had been found guilty, leaving only the Article 120, UCMJ, offense, of aggravated sexual contact by using strength. This court affirmed the remaining findings of guilty, authorized a rehearing on sentence on the affirmed charges and specifications, and returned the record to The Judge Advocate General (TJAG) for remand to the convening authority.

The convening authority ordered a sentencing rehearing, which took place on 15 December 2016 and 27–29 March 2017. A general court-martial composed of officer members sentenced Appellant to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence adjudged at the rehearing.

On further review, this court reaffirmed the previously affirmed findings and affirmed the sentence, but granted 21 days of confinement credit for illegal pretrial confinement. *United States v. Rodriguez*, No. ACM 38519 (reh), 2019 CCA LEXIS 35 (A.F. Ct. Crim. App. 30 Jan. 2019) (unpub. op.) (*Rodriguez III*), *rev'd in part and remanded*, 79 M.J. 311 (C.A.A.F. 2019) (mem.).

The United States Court of Appeals for the Armed Forces (CAAF) granted review on the issue of whether this court had "erred by finding the military judge's improper propensity instruction harmless beyond a reasonable doubt." *Rodriguez*, 79 M.J. at 311; *see Rodriguez II*, unpub. op. at *35 (analyzing harmlessness of constitutional error in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016)). The CAAF summarily reversed this court's decision as to "Specification 1 of Second Additional Charge I,"[7] the sole remaining Article 120, UCMJ, offense of which Appellant then stood convicted, which alleged aggravated sexual contact by using strength. *Rodriguez*, 79 M.J. at 311. The CAAF set aside the finding of guilty as to that specification and the sentence and affirmed the remaining findings. *Id*. The CAAF returned the record to TJAG for remand to this court, which the CAAF authorized to "either dismiss Specification 1 of Second Additional Charge I and reassess the sentence based

---

[7] Originally, the Second Additional Charge had three specifications. However, Specifications 2 and 3 were set aside and dismissed and "Specification 1" was redesignated "Specification" on the charge sheet before the sentencing rehearing.

on the affirmed findings, or . . . order a rehearing on the affected specification and the sentence." *Id.*

On 16 January 2020, this court returned the record to TJAG for remand to the convening authority and authorized a rehearing on the Specification of Second Additional Charge I and on the sentence. *United States v. Rodriguez*, No. ACM 38519 (rem), 2020 CCA LEXIS 16 (A.F. Ct. Crim. App. 16 Jan. 2020) (order) (*Rodriguez IV*). On 1 April 2020, the convening authority initially ordered a rehearing. However, on 21 May 2020 the convening authority issued an order stating that a rehearing on the specification and sentence was found to be impracticable. The order dismissed the Specification of Second Additional Charge I[8] and reassessed the sentence to a bad-conduct discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

Upon further review, this court determined the convening authority had erroneously failed to provide Appellant the opportunity to submit matters pursuant to Rule for Courts-Martial (R.C.M.) 1105 or to receive and respond to the staff judge advocate's recommendation (SJAR) pursuant to R.C.M. 1106 before the convening authority took action by reassessing the sentence. *United States v. Rodriguez*, No. ACM 38519 (f rev), 2021 CCA LEXIS 688 (A.F. Ct. Crim. App. 21 Dec. 2021) (unpub. op.) (*Rodriguez V*). Accordingly, this court set aside the convening authority's 21 May 2020 order and returned the record to TJAG for new post-trial processing. The convening authority's staff judge advocate (SJA) prepared an SJAR, which was served on the Defense, and Appellant submitted a new clemency request to the convening authority. On 31 March 2022, the convening authority issued a new action in which she again found a sentence rehearing was impractical; dismissed Second Additional Charge I and its Specification; and again reassessed the sentence for Appellant's remaining convictions to a bad-conduct discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

Appellant's record was re-docketed with this court on 1 April 2022. On 28 November 2022, Appellant submitted three assignments of error pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): (1) whether Appellant's sentence is inappropriately severe; (2) whether Appellant's registration as a sex offender represents cruel or unusual punishment or otherwise warrants sentence appropriateness relief; and (3) whether Appellant is entitled to relief for "the Government's post-trial processing errors and delays." In addition, we review the convening authority's sentence reassessment as an issue distinct

---

[8] Although there were no remaining specifications under Second Additional Charge I, the convening authority did not affirmatively dismiss that charge.

from whether the sentence is inappropriately severe. We have carefully considered issue (2) and find it warrants neither discussion nor relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). With regard to the remaining issues, for the reasons stated below we find a reduction in Appellant's term of confinement is appropriate, and we take corrective action in our decretal paragraph.

## I. BACKGROUND

Between 2009 and 2011, Appellant was a married Air Force recruiter stationed in Texas. The 22 specifications of which Appellant remains convicted[9] arose primarily from his behavior with 15 Air Force applicants, recruits, and recruiter assistants (RAs)—notably his attempts to maintain personal and intimate relationships with them in violation of Air Education and Training Command Instruction 36-2909, *Professional and Unprofessional Relationships* (2 Mar. 2007)—and from Appellant's actions during the investigation of his alleged offenses, including attempting to impede the investigation, violating a no contact order, and making a false official statement.

## II. DISCUSSION

### A. Sentence Severity

#### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although the Courts of Criminal Appeals (CCAs) are empowered to "do justice[ ] with reference to some legal standard," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

---

[9] The military judge found Appellant guilty of 22 specifications in accordance with his pleas, but merged two of the specifications for sentencing purposes.

**2. Analysis**

Appellant contends that his approved sentence is inappropriately severe. He reiterates trial defense counsel's argument that without the set-aside Article 120, UCMJ, offense against JD, his remaining offenses "warranted no more than 18 months [of] confinement." He emphasizes that the set-aside offense was the most serious in terms of its 20-year contribution to the maximum imposable punishment, and it was the only nonconsensual sexual offense for which he was convicted. Appellant contends that because he has already served the full six-year term of confinement, and the expiration of his term of service in 2013 prevents the award of any significant back pay, any reduction in his sentence to confinement would be inadequate to lower his punishment to an appropriate level. Therefore, Appellant requests this court set aside his bad-conduct discharge.

We are not persuaded the sentence reassessed by the convening authority is inappropriately severe for Appellant's offenses. Appellant extensively abused his position as a recruiter to target young applicants, recruits, and RAs for his own sexual purposes. Furthermore, he repeatedly attempted to thwart the subsequent investigation into his misconduct by, *inter alia*, asking another recruiter to lie to investigators on Appellant's behalf. Without the set-aside specification, the remaining offenses still represent a maximum imposable sentence that included a dishonorable discharge and confinement for 54 years and six months. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we conclude the sentence approved by the convening authority—including the bad-conduct discharge—was not inappropriately severe punishment as a matter of law.

**B. Sentence Reassessment**

Appellant has not challenged the convening authority's reassessment of his sentence as a distinct assignment of error. However, his arguments related to the appropriateness of his sentence do challenge the propriety of that reassessment. In addition, in conducting our review of the entire record, we review de novo a convening authority's reassessment of the sentence. *See United States v. Kelly*, 77 M.J. 404, 406 (C.A.A.F. 2018) (recognizing a CCA has "awesome, plenary, *de novo* power" to review the "entire record" (citations omitted)); *United States v. Rambharose*, No. ACM 38769 (f rev), 2020 CCA LEXIS 263, at *7–11 (A.F. Ct. Crim. App. 7 Aug. 2020) (unpub. op.) (applying de novo review to convening authority sentence reassessment). Accordingly, recognizing that the question of sentence reassessment is governed by a particular body of law and is distinct from sentence appropriateness more generally, we consider the convening authority's reassessment of the sentence.

### 1. Additional Background

At the March 2017 sentence rehearing, Appellant was sentenced by a panel of officers for 22 specifications to which he pleaded guilty, as well as for the one contested Article 120, UCMJ, specification this court had affirmed in its July 2016 opinion. This specification alleged Appellant "cause[d] [JD] to engage in sexual contact, to wit: forcing the hand of [JD] to contact his exposed penis, by using strength sufficient that she could not avoid or escape the sexual contact." The court members sentenced Appellant to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

As described above, as a result of further appellate proceedings this Article 120, UCMJ, conviction was set aside. On 7 March 2022, the convening authority's SJA signed an SJAR that, *inter alia*, summarized the procedural history of Appellant's case, provided the legal standards for ordering a rehearing and for sentence reassessment, and analyzed the factors regarding the appropriateness of reassessment articulated in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). The SJA recommended the convening authority dismiss the set-aside Article 120, UCMJ, specification without prejudice and reassess the sentence to a bad-conduct discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the grade of E-1.[10] The SJAR was served on the Defense. On 21 March 2022, Appellant submitted a clemency request that did not object to the SJAR, but asked the convening authority to "consider reducing [his] Bad Conduct Discharge [sic]." The SJA's recommendation remained unchanged in her 31 March 2022 addendum to the SJAR. The convening authority took action on 31 March 2022 in accordance with the SJA's recommendations.

### 2. Law

Under Article 59(a), UCMJ, 10 U.S.C. § 859(a), a court-martial sentence may not be held incorrect by virtue of legal error "unless the error materially prejudices the substantial rights of the accused." If a reviewing authority can reliably conclude that an adjudged sentence would have been of at least a certain severity absent an error, "then a sentence of that severity or less will be free of the prejudicial effects of error; and the demands of Article 59(a) will be met." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). "[I]f the error at trial was one of constitutional magnitude, then it would seem necessary that

---

[10] The SJA also recommended the convening authority direct 21 days of illegal pretrial confinement credit, as this court had previously ordered. *See United States v. Rodriguez*, No. ACM 38519 (f rev), 2021 CCA LEXIS 688, at *19 n.17 (A.F. Ct. Crim. App. 21 Dec. 2021) (unpub. op.) (*Rodriguez V*).

the [CCA] should be persuaded beyond a reasonable doubt that its reassessment has rendered harmless any error affecting the sentence adjudged at trial." *Id.* at 307 (citing *Chapman v. California*, 386 U.S. 18 (1967)) (additional citation omitted).

Where a CCA has approved some of the findings of guilty and authorized a rehearing on some of the findings and the sentence, R.C.M. 1107(e)(1)(B)(iv) (*Manual for Courts-Martial, United States* (2008 ed.)) authorizes the convening authority to reassess the sentence based on the approved findings, provided that she "determines that the accused's sentence would have been at least of a certain magnitude had the prejudicial error not been committed and the reassessed sentence is appropriate in relation to the affirmed findings of guilty."

Whether a sentence may be reliably reassessed is "based on the totality of the circumstances presented." *Winckelmann*, 73 M.J. at 15. The CAAF has identified the following non-exclusive factors to "assist" in such an analysis: (1) "Dramatic changes in the penalty landscape and exposure;" (2) "Whether an appellant chose sentencing by members or a military judge alone;" (3) "Whether the nature of the remaining offenses capture[s] the gravamen of criminal conduct included within the original offenses and . . . whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses;" and (4) "Whether the remaining offenses are of the type that judges of the [CCAs] should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial." *Id.* at 15–16 (citations omitted).

A CCA reviews a convening authority's sentence reassessment de novo. *See United States v. Williams*, 54 M.J. 380, 380–81 (C.A.A.F. 2000) (mem.); *see also Rambharose*, unpub. op. at *7–11 (applying de novo rather than abuse of discretion review to convening authority sentence reassessment).

**3. Analysis**

The convening authority's reassessment of Appellant's sentence raises two related but distinct questions: (1) whether a reassessment was appropriate; and (2) without the now-dismissed Article 120, UCMJ, specification, whether the resentencing court-martial would have imposed a sentence at least as severe as the reassessed sentence. We consider each question in turn.

### *a. Was Reassessment Appropriate?*

Having considered the four non-exclusive *Winckelmann* factors, we agree with the SJA and convening authority that reassessment was appropriate.

With respect the penalty landscape and exposure, although the removal of the Article 120, UCMJ, specification was a significant change, it was not "dra-

matic." The extent of the misconduct captured in the remaining 22 specifications is still very broad. Appellant remains convicted of offenses affecting, *inter alia*, 15 applicants, recruits, and RAs, including misconduct toward the alleged victim of the dismissed Article 120, UCMJ, specification, JD. The maximum imposable term of confinement declined from 74 years and six months to 54 years and six months—still more than nine times the adjudged confinement—and the other elements of the maximum sentence remained unchanged.

Appellant notes that this court's December 2021 opinion described the removal of the Article 120, UCMJ, offense against JD as a "significant change to the sentencing landscape." *Rodriguez V*, unpub. op. at *18. However, the context for that statement was significantly different from the current issue. This court was not addressing the propriety of sentence reassessment, but the prospect that the convening authority might be persuaded to exercise her "extremely broad discretion" to modify the sentence as a matter of clemency, given the changed circumstances. *Id.* at *17. Although the opinion described the change as "significant," it noticeably avoided describing the change as "dramatic," a term that might have evoked sentence reassessment analysis under *Winckelmann*. Accordingly, we find no material tension between this court's prior opinion and our conclusion that the first *Winckelmann* factor does not weigh against reassessment.

In *Winckelmann*, the CAAF explained: "[a]s a matter of logic, judges of the [CCAs] are more likely to be certain of what a military judge would have done as opposed to members." 73 M.J. at 16. In this case Appellant was resentenced by members. Accordingly, this factor weighs against reassessment.

However, the final two factors favor reassessment. We find "the remaining offenses capture the gravamen of criminal conduct included within the original offenses." *Id.* Although Appellant's conviction for aggravated sexual contact against JD, a recruit, was set aside, Appellant remains convicted of sexually oriented misconduct with JD and numerous others by exploiting his position as a recruiter, as well as other offenses. In addition, we find the nature of Appellant's remaining violations of Articles 92, 107, 125, and 134, UCMJ, are not unfamiliar to the judges of this court.

Accordingly, weighing the *Winckelmann* factors together, recognizing that they are "illustrative" and not "dispositive," and considering the totality of the circumstances, we agree with the convening authority that it is possible to reliably determine a sentence the court-martial would have imposed had the error at trial not occurred.

### b. What Sentence Removes the Effects of the Error?

Next, we review de novo the sentence reassessed and approved by the convening authority. Because the error in this case was of a constitutional dimension, *see Hills*, 75 M.J. at 356–58, we cannot affirm a sentence unless we are convinced beyond a reasonable doubt that the reassessment rendered the error harmless. *Sales*, 22 M.J. at 307. The convening authority reduced Appellant's punitive discharge from a dishonorable discharge to a bad-conduct discharge but retained the other elements of the sentence imposed at resentencing—including the six-year term of confinement. We are not convinced beyond a reasonable doubt the court members would have adjudged a sentence at least equally severe to that approved by the convening authority.

We acknowledge, as we described above, that Appellant remains convicted of 22 offenses, including specifications representing Appellant's repeated and widespread abuse of his position as a recruiter to target young applicants and Airmen for sexual purposes. However, several considerations lead us to conclude a reduction in Appellant's term of confinement is appropriate.

The now-dismissed Article 120, UCMJ, specification was of a different character than the other offenses in that it was the only nonconsensual sexual offense. In terms of its contribution to the maximum imposable term of confinement—20 years of the maximum 74 years and six months—it was the most serious offense. In addition, trial counsel repeatedly referred to Appellant's aggravated sexual contact against JD during his sentencing arguments at the rehearing, during which he recommended the court members sentence Appellant to confinement for 12 years as well as a dishonorable discharge and reduction to the grade of E-1. We further note trial defense counsel also indirectly emphasized at the rehearing the relative significance of the Article 120, UCMJ, offense. He described that offense as "serious" and might have "justifi[ed] maybe even [two] years in confinement," whereas the remaining offenses combined warranted "no more than 18 months." Trial defense counsel also contended the needs of society, the Air Force, and Appellant had already "been met" by the approximately four years of confinement Appellant had served as of the date of his sentence rehearing.

Considering the totality of the circumstances, we conclude that without the set-aside Article 120, UCMJ, specification, the court members would have adjudged a sentence no lower than a bad-conduct discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to the grade of E-1. Moreover, we find this reassessed sentence is appropriate for the affirmed findings of guilty.

We recognize Appellant has urged us to disapprove the punitive discharge as "the only remaining remedy that offers any true relief." Appellant has long since completed the six-year term of confinement adjudged at his resentencing hearing. Furthermore, he believes that because his term of service expired

around the time he entered confinement in 2013, he will not be entitled to back pay as a result of any confinement credit from a reduction in his confinement term. However, the reassessment *has* benefited Appellant by replacing his adjudged dishonorable discharge with a bad-conduct discharge. In addition, we are bound to approve a sentence no greater than that which the court-martial would have approved absent the error, regardless of how much that change does or does not benefit Appellant. As this court has said before, "[i]n some cases, maintaining the integrity of the military justice system enacted by Congress may require this court to take action that is not requested by any party." *United States v. Ramirez*, No. ACM S32538, 2020 CCA LEXIS 20, at *17 (A.F. Ct. Crim. App. 24 Jan. 2020) (unpub. op.) (citing *United States v. Montesinos*, 28 M.J. 38, 47 (C.M.A. 1989)).

## C. Post-Trial Delay

### 1. Law

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). We review de novo an appellant's entitlement to relief for post-trial delay. *Id.* (citations omitted). In *Moreno*, the CAAF established a presumption of facially unreasonable delay when the convening authority does not take action on the sentence within 120 days of sentencing, when the record of trial is not docketed with the CCA within 30 days of action, or when the CCA has not rendered a decision within 18 months of docketing. *Id.* at 142; *cf. United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (applying *Moreno* in the context of new post-trial procedures applicable to cases referred to trial on or after 1 January 2019).

Where there is such a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). "No single [*Barker*] factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533). However, where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and

integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), a CCA may grant relief for unreasonable post-trial or appellate delay as a matter of sentence appropriateness review, even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002); *see also United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016) (enumerating factors to guide CCA analysis as to whether *Tardif* relief is appropriate).

### 2. Analysis

This court's 30 January 2019 opinion addressed whether the post-trial and appellate delays in Appellant's case up to that point violated his due process rights or warranted relief as a matter of sentence appropriateness. *Rodriguez III*, unpub. op. at *56–62. This court concluded no relief was warranted.

Appellant personally asserts once again that he is entitled to relief due to the Government's post-trial errors and delays. Appellant cites a number of appellate decisions finding post-trial errors and breaches of the *Moreno* standards in other cases processed by the same convening authority legal office between 2015 and 2021. Appellant notes this court has observed post-trial errors and delays in his own case, including the error that led this court to remand the record for a new post-trial process on 21 December 2021. *Rodriguez V*, unpub. op. at *9–19. As prejudice, Appellant asserts that despite the CAAF setting aside his sole remaining Article 120, UCMJ, conviction, he "remained on the sex offender registry or was otherwise required to perform certain tasks required of sex offenders due to how long his appeal ha[d] taken and the apparent lack of finality to his case generally." Appellant requests this court set aside his bad-conduct discharge as a remedy for violation of his due process rights or, in the alternative, as sentence appropriateness relief pursuant to *Tardif*.

We begin our analysis with Appellant's assertion of prejudice due to registration and other requirements applicable to sex offenders. The CAAF set aside Appellant's remaining Article 120, UCMJ, offense on 7 November 2019, and it is unclear from the record that any continuing sex offender registration requirements should have or did apply to him after that point. Appellant's clemency memorandum to the convening authority dated 21 March 2022 refers to Appellant's experience with sex offender registration and restrictions after he

was released from confinement, but it is ambiguous as to how long such requirements had been applied and whether they were ongoing.[11] A declaration Appellant submitted to this court on 11 June 2021 contains similar information and is similarly ambiguous. The record also fails to indicate whether or not Appellant would have continuing sex offender requirements in the jurisdiction where he resides based on his remaining affirmed offenses. Therefore, it is unclear any delay associated with the remand in *Rodriguez V* had any effect on Appellant's sex offender registration status. Accordingly, we are not persuaded Appellant has demonstrated "particularized" anxiety and concern "distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision," or other cognizable prejudice under *Moreno*, 63 M.J. at 138–40.

In the absence of prejudice, the standard for a violation of Appellant's due process rights is delay so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. Focusing on the period of time following the CAAF's November 2019 opinion, we do not find such delays. Following this court's January 2020 remand (*Rodriguez IV*), approximately four months later in May 2020 the convening authority determined a sentence rehearing would be impracticable despite initially ordering such a proceeding. The primary cause of delay between May 2020 and June 2021, when Appellant filed his assignments of error, were nine enlargements of time requested by the Defense. The Government filed its answer a month later in July 2021, and this court issued its opinion remanding the record for a new post-trial process on 21 December 2021 (*Rodriguez V*).

It is true that government error required this remand and caused additional delay. However, we do not consider the error by the SJA and convening authority in misapprehending the requirement for a new SJAR and clemency opportunity before reassessing the sentence to be egregious. The remand presented a relatively uncommon situation, and neither the CAAF's opinion nor this court's opinion explicitly referred to such a requirement. *See Rodriguez*, 79 M.J. at 311; *Rodriguez V*, unpub. op. at *19.

We also do not find the delay from our 21 December 2021 remand to the convening authority's new action on 31 March 2022 to be egregious. In that period, the SJA was able to formulate a relatively detailed recommendation for the convening authority, serve it on the Defense, obtain the new clemency submission, and obtain the convening authority's new action. The delay between re-docketing with this court on 1 April 2022 and Appellant filing his new assignments of error on 28 November 2022 is primarily attributable to Appellant

---

[11] For example, the concluding paragraph of the memorandum refers to Appellant's "previous sex offender registration," implying such requirements existed in the past.

obtaining five additional enlargements of time to file, and does not reflect adversely on the Government.

Accordingly, we do not find the delays in Appellant's case—specifically those incurred after this court's 30 January 2019 opinion (*Rodriguez III*), either standing alone or in combination with previous delays—to be so egregious as to undermine the perception of fairness and integrity in the military justice system. Therefore, we find no violation of Appellant's due process rights. We have also considered the factors enumerated in *Gay* and conclude *Tardif* relief for post-trial and appellate delay is not warranted.

## III. CONCLUSION

We reassess the sentence to a bad-conduct discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The remaining findings were previously affirmed. The sentence, as reassessed, is correct in law and fact, and no additional error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). The sentence, as reassessed, is **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

14