# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

---

### No. ACM 40369

---

### UNITED STATES
*Appellee*

v.

### Clint C. SCOTT
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

---

Appeal from the United States Air Force Trial Judiciary[1]

Decided 12 November 2024

---

*Military Judge*: Colin P. Eichenberger.

*Sentence*: Sentence adjudged 8 June 2022 by GCM convened at Davis-Monthan Air Force Base, Arizona. Sentence entered by military judge on 10 August 2022: Confinement for 180 days, forfeiture of $3,704.00 pay per month for 6 months, and reduction to E-5.

*For Appellant*: Major Spencer R. Nelson, USAF.

*For Appellee*: Lieutenant Colonel J. Pete Ferrell, USAF; Captain Heather R. Bezold, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, DOUGLAS, and PERCLE, *Appellate Military Judges*.

Judge PERCLE delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge DOUGLAS joined.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), *Manual for Courts-Martial, United States* (2024 ed.).

PERCLE, Judge:

At a general court-martial Appellant was convicted, consistent with his pleas, of one specification of communicating a threat, in violation of Article 115, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 915, and three specifications of assault consummated by a battery against two active duty servicemembers, NR and BZ, in violation of Article 128, UCMJ, 10 U.S.C. § 928.[2] A panel of officer and enlisted members sentenced Appellant to 180 days' confinement, forfeiture of all pay and allowances for six months, and reduction to the grade of E-5. The convening authority took no action on the findings and acted on the sentence by reducing the adjudged forfeiture to $3,704.00 pay per month for six months. The convening authority disapproved Appellant's request to defer the forfeiture but granted the request to defer the adjudged rank reduction until the date the entry of judgment was signed.

Appellant asserts two assignments of error which we have reworded: (1) whether the portion of Appellant's sentence calling for reduction in one rank to E-5 is inappropriately severe, and (2) whether, as applied to Appellant, 18 U.S.C. § 922, is unconstitutional because the Government cannot demonstrate that barring his possession of firearms is "[c]onsistent with the Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). We carefully considered Appellant's second issue and find it does not warrant further discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987); *see also United States v. Vanzant*, 84 M.J. 671, 681 (A.F. Ct. Crim. App. 2024), *rev. granted*, __ M.J. __, No. 24-0182, 2024 CAAF LEXIS 640, (C.A.A.F. 17 Oct. 2024); *United States v. Lepore*, 81 M.J. 759, 763 (A.F. Ct. Crim. App. 2021) (en banc). As to the remaining issue, we find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

On two occasions separated by approximately three years, Appellant physically assaulted two of his subordinates and threatened to harm one of them. On the first occasion in 2018, while on temporary duty, Appellant was out drinking with members of his unit, including NR, a male active duty Airman. At that time, Appellant was NR's supervisor. After the members of the unit finished drinking and walked outside the bar, Appellant overheard NR in a truck saying something negative regarding unit comradery. In response to NR's comment, Appellant reached into the open window of the truck where NR

---

[2] References to the Article 128, UCMJ, offense involving NR are to the *Manual for Courts-Martial, United States* (2016 ed.). References to the Article 115, UCMJ, and Article 128, UCMJ, offenses involving BZ are to the *Manual for Courts-Martial, United States* (2019 ed.).

was seated and put his hand on NR's neck. Appellant then tried to pull NR out of the truck through the window. NR was held in the truck by the driver, who was another member of the unit. Other members of the unit managed to get Appellant away from NR, ending the altercation. NR did not sustain any injuries from Appellant's actions; however, while trying to avoid being pulled out of the truck by Appellant, NR inadvertently caused the driver of the truck to get a bloody nose. Following the incident, NR did not immediately report the assault because Appellant was NR's supervisor.

Several years later, on 5 March of 2021, Appellant was off duty at a bar drinking with members of his unit, including NR and BZ. At this time, Appellant supervised BZ who was a young female subordinate. While at the bar, Appellant became heavily intoxicated and, without any provocation, shoved BZ by pushing his hand against her face. Sometime later that evening, Appellant shoved BZ on the shoulder so hard she stumbled over some chairs and fell. Appellant also admitted that he threatened to punch BZ in the face so hard "her pigtails would fall off," forming the basis for Appellant's Article 115, UCMJ, conviction. Immediately afterwards, Appellant put his arm out as BZ walked by and offensively touched her breast. Several observers approached BZ at the bar to make sure she was all right. Also while at the bar, Appellant made derogatory remarks about BZ both to her personally and about her to other people.

## II. DISCUSSION

### A. Additional Background

Pursuant to his plea agreement, Appellant elected to be sentenced by officer and enlisted members. After voir dire and challenges were complete, Appellant's panel consisted of two Lieutenant Colonels, one Major, two First Lieutenants, one Senior Master Sergeant, and two Master Sergeants. Appellant does not now on appeal challenge any selected member of his panel.

Members were presented a sentencing case with matters in aggravation, mitigation, and extenuation through prosecution and defense exhibits and through the testimony of witnesses called by both parties. Members also heard the sworn testimony of BZ and an unsworn statement submitted by NR. In his unsworn statement, NR told members what he wanted was closure and an apology, and that he "had no interest in seeing a retirement after 19 years of long dedicated military service[,] stripped from [Appellant] who after today will no longer affect [him]."

Matters presented to the members showed Appellant had an impactful and lengthy career in the Air Force, serving over 19 years. For most of his career, Appellant served in support of the critical aircrew life support and equipment

mission, primarily as a parachute rigger and trainer. Appellant also honorably served on four deployments to Afghanistan. At his court-martial, of the 21 character letters written on Appellant's behalf, 14 came from active duty servicemembers and 5 from retired servicemembers, all attesting to Appellant's otherwise honorable service and rehabilitative potential. During his unsworn statement at trial, Appellant personally and directly apologized to both BZ and NR for his actions in hurting them.

As part of the Defense's sentencing matters, members were also presented with the difference in the amount of retirement pay, in dollars, that Appellant would make as a retired E-5 versus a retired E-6. Importantly, Appellant's plea agreement, which he does not contest, allowed for, *inter alia*, the possibility of a sentence containing both a reduction in rank to E-5 and any punitive discharge.

During sentencing argument, the Government asked the members to adjudge a bad-conduct discharge, 12 months' confinement with forfeitures during confinement, and a reduction in grade to E-5. In contrast, trial defense counsel argued these offenses were "more akin" to offenses typically resolved by nonjudicial punishment and requested the adjudged sentence reflect that. Trial defense counsel suggested the panel limit the "tools" used to sentence Appellant to a reduction in rank and other options like hard labor without confinement and a reprimand. At the end of his sentencing argument, trial defense counsel expressly requested the members reduce Appellant's rank to E-5, acknowledging this would cost Appellant approximately $166,000.00 in the course of his lifetime, arguing that punishment would be "more than enough."

**B. Law**

We review issues of sentence appropriateness de novo. *See United States v. McAlhaney*, 83 M.J. 164, 167 (C.A.A.F. 2023) (citing *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006)). Our authority to review a case for sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to, considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam)). Although we have great discretion to determine whether a sentence is appropriate, we have no power "to grant mercy." *United States v.*

*Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

"Absent evidence to the contrary, [an] accused's own sentence proposal is a reasonable indication of its probable fairness to him." *United States v. Cron*, 73 M.J. 718, 736 n.9 (A.F. Ct. Crim. App. 2014) (quoting *United States v. Hendon*, 6 M.J. 171, 175 (C.M.A. 1979)). Thus, when considering the appropriateness of a sentence, courts may consider that a pretrial agreement or plea agreement— to which an appellant agreed—placed limits on the sentence that could be imposed. *United States v. Fields*, 74 M.J. 619, 625–26 (A.F. Ct. Crim. App. 2015). However, a sentence within the range of a pretrial agreement or a plea agreement may be inappropriately severe. *Id.* at 626.

**C. Analysis**

Appellant asks that we disapprove his reduction in rank to E-5. Appellant argues the reduction in rank is inappropriate "when considered alongside the other punishments he was given, the seriousness of the offenses he was convicted of, his record of service, and the circumstances surrounding the offenses." We are not persuaded that his sentence, including the portion related to his reduction in rank to E-5, combined with the total sentence of confinement for 180 days, and forfeiture of $3,704.00 pay per month for six months, is inappropriately severe.

We look first at this particular Appellant and the nature and seriousness his offenses. Having served over a decade before his first incidence of misconduct and having been a seasoned noncommissioned officer, Appellant committed three specifications of assault consummated by a battery and one specification of communicating a threat—all against other military members who were his subordinates. Not only was his misconduct against members of his unit, Appellant turned two separate unit gatherings into crime scenes. First, he assaulted a subordinate in public and in view of other members of the unit, indirectly causing injury to a unit member and requiring the intervention of unit members to stop his violence. Second, unprovoked and again in a public place, Appellant attacked his young female subordinate, BZ, by pushing her face and shoulder, and knocking her over chairs. When BZ got up from the table, Appellant put out his arm to block her path and then touched her breast. Appellant's crimes against BZ were brazen misconduct on their own, and more so considering he assaulted another subordinate, NR, years before. Put another way, Appellant's total misconduct is not a one-time incident over the course of his 19-year career and was instead aggravated in light of his age and experiences as an Airman. The circumstances surrounding the offenses of which Appellant was convicted, especially his senior position compared to his victims and in view of other unit members and the public, further serve to aggravate his misconduct.

In looking to Appellant's record of service, we acknowledge he honorably served four deployments to Afghanistan and positively impacted the mission while on duty. However, it was not his on-duty behavior, but what he did off duty, that became the subject of his court-martial. We also find it important that, in coming to their sentence, the panel had the opportunity to consider the same career success and service record Appellant now highlights. While we give his record of service due weight, we do not consider it in a vacuum nor find it dispositive of an appropriate sentence.

In looking to all other matters contained in the entire record of trial, we highlight a few other considerations. We start by considering the total sentence in light of the maximum punishment authorized based solely on the Appellant's guilty plea—a dishonorable discharge, confinement for 54 months, forfeiture of all pay and allowance, and reduction to the grade of E-1. We note the adjudged sentence was significantly less than the maximum possible sentence for the crimes for which Appellant freely pleaded guilty. In addition to considering the maximum possible punishment, we consider that Appellant signed a plea agreement in this case. Pursuant to his plea agreement, the maximum punishment authorized was a dishonorable discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction to the rank of E-5. We again note the adjudged sentence was well below the maximum sentence for his plea agreement. In Appellant's case we believe both the maximum possible punishment and plea agreement maximum compared to the adjudged sentence weigh in favor of finding Appellant's total sentence was not inappropriately severe, giving more weight to the former than the latter.

We next look at argument of counsel during trial and note that counsel for Appellant expressly asked members to adjudge the rank reduction Appellant now contests. We are reminded that Appellant's own sentence proposal "is a reasonable indication of its probable fairness to him." *Cron*, 73 M.J. at 736 n.9. Further, when trial defense counsel expressly requested the members adjudge the rank reduction he now contests, counsel duly informed members of the "cost" it would have on Appellant for years to come. After trial defense counsel made these arguments, the panel reached a sentence that was significantly less than what was asked for by the Government during its argument, and much closer to that which Appellant's own counsel requested. This is especially significant in light of the fact that a punitive discharge was available as a possible punishment and one which was requested by the Government but was not adjudged. Put another way, the members had the ability to strip Appellant of his retirement entirely by adjudging a punitive discharge but apparently chose instead the lesser punishment including, *inter alia*, a reduction in rank and some confinement *because* of the request of Appellant through trial defense counsel. Appellant made one argument at trial in hopes to benefit from it, and we are not persuaded to accept the alternative argument on appeal. We find

his request at trial to members to reduce his rank is a reasonable indication it was favorable to him at the time and we will not disturb that request. Finally, we also note that Appellant already received some financial sentence relief in clemency.

Having considered the nature and seriousness of Appellant's misconduct, and matters contained in the entire court-martial record, including his record of service, rehabilitative potential, all matters submitted in extenuation and mitigation, his pleas of guilty, and his verbal unsworn statement, and having given careful consideration to the appropriateness of the sentence as a whole, we conclude the adjudged reduction in rank to E-5, along with the adjudged confinement and approved forfeitures, fairly and appropriately punish Appellant for his misconduct. Therefore, the sentence as entered is not inappropriately severe.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court